83    345
95    130

83    345
d101   71

CASE 51—PROBATE OF WILL—NOVEMBER 5.

## Fuller v. Fuller.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. WILLS—CREDIBLE WITNESSES.—The requirement of the statute that
   a will shall be attested by "at least two credible witnesses," means
   that it shall be attested by such persons as are not disqualified by
   mental imbecility, interest or crime, from giving testimony in a
   court of justice. It was, therefore, error in this case to require
   the jury to find that the witnesses to the will in contest were cred-
   ible persons, in order to sustain the will; but as there was no
   testimony even tending to show that the witnesss to the will
   were not credible, the instruction was not prejudicial.
2. EVIDENCE—PREJUDICIAL ERROR.—The refusal of the court to per-
   mit the propounder of a will to testify in chief after the contestant
   had introduced his testimony, and after she had introduced other
   testimony in her behalf, even if error, does not appear to have
   been prejudicial, as there was no avowal of what she would state
   if introduced in chief, and nothing to show that she did not, in
   fact, testify all she knew.
3. AN INSTRUCTION calling attention to the isolated fact that, by the
   paper in contest the maker had disinherited his son, was properly
   refused.
4. EVIDENCE.—LETTERS from the testator to his son, the contestant,
   were competent to show the affectionate relation existing between
   them, and the purposes of the testator with regard to the disposi-
   tion of his property.
5. HUSBAND AND WIFE—CONFIDENTIAL COMMUNICATIONS.—Letters
   from the testator to his wife, the propounder, were not incompetent
   as evidence for the latter upon the ground that they were "confi-
   dential communications."

Fuller v. Fuller.

C. J. HELM and O'HARA & BRYAN for appellant.

1. Whether the testator had capacity to "take charge of a large business" was not the test of the testator's testamentary capacity, and it was misleading to allow the question to be asked.

2. The letters from the testator to his son were incompetent as evidence in the absence of the other part of the correspondence.

3. It was error not to allow the propounder of the will to testify in chief. Subsection 4 of section 606 of the Civil Code does not apply to the special proceeding of probating a will. (Milton et al. v. Hunter, 13 Bush, 171; Flood v. Pragoff, 79 Ky., 612.)

4. The letters from the testator to his wife were competent evidence for the latter. The inhibition of the Code is not against communications between husband and wife being given in testimony, but against either husband or wife testifying in regard thereto. (Civil Code, section 606, subsection 1; Goddard v. Gardner, 28 Conn., 172; 2 Stark. Ev., 230; 1 Greenl. on Ev., section 239; 1 Phil. Ev., 162; Gainsford v. Grammar, 2 Camp., 9; Jackson v. French, 3 Wend., 337; Hatton v. Robinson, 14 Pick., 416; Hoy v. Morris, 13 Gray, 519; State v. Center et al., 35 Vt., 378; Smith v. Griffin, 110 Mass., 181; The State v. Buffington, 20 Kansas, 599.)

5. It was error to require the propounder to prove that the attesting witnesses were "credible persons;" their credibility is presumed.

O. W. ROOT and A. T. ROOT for appellee.

1. Errors not specified in the grounds for a new trial will be treated as waived. (Slater and Wife v. Sherman, 5 Bush, 206; Hopkins v. Commonwealth, 3 Bush, 480; L., C. & L. R. R. Co. v. Mahoney's Adm'r, 7 Bush, 237.)

2. The entire exclusion by the testator of his only child is a fact entitled to great weight upon the questions of testamentary capacity and undue influence. (Kevil, &c., v. Kevil, &c., 2 Bush, 614.)

3. The court properly refused to allow the propounder to testify in chief after introducing other testimony in her behalf, and after the testimony for the contestant was closed. (Civil Code, section 606.) But if the court erred, the error was not prejudicial, as she was only nominally prohibited from testifying in chief.

4. The letters from the testator to his son were competent as a part of the res gestæ; they showed the testator's feeling toward his son, and his purposes with regard to his property. (1 Greenleaf on Ev., section 108.)

5. As to the law of sound and disposing mind and memory, and of improper or undue influence in its application to testators in the execution of wills, and the legal definition of those phrases. (Tudor v. Tudor, 17 B. M., 395; Wier's Will Case, 9 Dana, 440; Overton's Heirs v. Overton's Ex'rs, 18 B. M., 63; Quisenberry v. Quisenberry,

Fuller v. Fuller.

14 B. M., 482; Ashley Howard's Will., 5 Mon., 199; Reed's Will, 2 B. M., 79; McDaniel's Will, 2 J. J. Mar., 331; Elliott's Will, 2 J. J. Mar., 340; Watson v. Watson, 2 B. M., 74; Harrell v. Harrell, 1 Duv., 204; Jones v. Jones, 14 B. M., 474; Maupin v. Wools, 1 Duv., 223; Turley's Ex'r v. Johnson, &c., 1 Bush, 116.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Wm. F. Fuller died on the 27th day of February, 1881, leaving the appellant, Jane Fuller, as his widow, and the appellee, Thomas S. Fuller, whose mother was a former wife, as his only child. On January 12, 1881, and during his last illness, he executed a paper in due form, purporting to be his will, and under which his widow would take his entire estate of about fifteen thousand dollars. The Campbell County Court, after hearing the testimony, probated it. The appellee, Thomas S. Fuller, appealed from its judgment, and upon a trial before a jury in the Campbell Circuit Court, it was rejected. The attack upon it is based upon the alleged testamentary incapacity of Wm. F. Fuller, as well as the claim that it was procured by undue influence.

It is unnecessary to review the testimony in the case, and sufficient to say that it is quite conflicting. Under the existing law, the verdict of a jury in a will case is entitled to the same effect as a verdict in any other civil case, and unless palpably against the testimony, it will not be disturbed. Such a state of case is not exhibited by the record, and it only remains for us to determine whether the lower court has committed any error as to the law of the case, by which the appellant's substantial rights have been prejudiced.

The propounder proved the due execution of the

paper, and then rested. The contestant then offered'
his testimony, and the appellant, Jane Fuller, then
offered to testify *in chief*. This was refused by the
court, and she then testified at length in rebuttal.
It is not necessary to decide whether the evidence,
which the propounder of a will offers after the con-
testant has introduced his testimony, is to be regarded'
as merely *contra*, or as in chief; nor whether, after
introducing other testimony in his behalf to prove
due execution of the paper as a will, he can, in a
proceeding of this character, testify for himself in
chief, under subsection 4 of section 606 of the Civil
Code, which provides: "No person shall testify for
himself in chief, in an ordinary action, after intro-
ducing other testimony for himself in chief." This
question is not now presented, and hence it would
not be proper to decide whether said section is ap-
plicable to a special proceeding of this character.
There was no avowal of what the appellant would
state if introduced in chief, nor does it appear that
she did not, in fact, testify all that she knew.

In fact a portion of her testimony was not in
rebuttal, but in chief; so that it seems she was
only *nominally* prohibited from testifying in chief,
and when she did testify, there was no offer to
prove any thing by her further than what was stated
by her, or any avowal or any showing in any way
that she could have testified to anything else.

The instruction asked by the appellant was prop-
erly refused, as it singled out and attempted to
instruct the jury upon the isolated fact that by the
paper in contest the maker had disinherited his

son; nor is the second instruction that was given by the court liable to the objection that it assumes that flattery or threats will necessarily create undue influence.

The first instruction that was given to the jury required them to believe from the testimony that the witnesses to the will were *credible* persons. This was not proper. It is true that section 5 of chapter 113 of the General Statutes requires that a will, if not wholly written by the testator, to be valid, must be acknowledged by him in the presence of and attested in his presence by "at least two *credible* witnesses." The statute of 1797 (2 M. & B., page 1537) used the word "*competent;*" and this seems to have been the language of the law until the adoption of the Revised Statutes in 1852, when the word "*competent*" was changed to the word "*credible.*"

Prior to the change, however, the word "*credible*" had been construed in similar statutes, in both England and many of the States of this country, to mean "*competent.*"

The English statute as to the execution of wills prior to 1838 used the word, "*credible;*" and in 1 Jarman on Wills, page 124, it is said, in speaking of it:

"The statute, it will be observed, required the witnesses to be 'credible,' and which was held to mean such persons as were not disqualified by mental imbecility, interest or crime from giving testimony in a court of justice."

This rule has been followed by the decisions of

the courts in the States of Massachusetts, Connecticut, Mississippi, South Carolina, and several others; where a similar statute existed. (Hawes v. Humphrey, 9 Pick., 350; Cornwell v. Isham, 1 Day, 35; Taylor v. Taylor, 1 Rich., 531; Rucker v. Lambdin, 12 S. & M., 230.)

We conclude that the law-making power had this construction and meaning in view when the word "credible" was introduced into the statute. No other construction of it is reasonable or free from absurdity.

Suppose a court or a jury have no doubt but what the testator in fact executed the paper, and that the attesting witnesses have testified truthfully; but yet it be shown that they are not credible persons. Is the will to be rejected?

Or suppose that the witnesses to a will were credible when it was executed; but when it is offered for probate, years after the execution of it, have become of bad character; now, assuming that the word "credible" does not relate to the date of attestation, is the will, therefore, to be rejected?

Or suppose the witnesses deliberately testify that they did not witness it, when, in fact, they did, but are of such bad character that they do not scruple at perjury—would not the propounder be allowed to prove their want of credibility, and that they, in fact, did attest it, and have it probated? It seems to us that further illustration is unnecessary.

In this case, however, there is nothing even tending to show that the witnesses to the will were not credible. No attack, either direct or indirect, was

made upon them; and it is evident from the entire record that the appellant was not prejudiced by the portion of the instruction which we have just reviewed.

The letters from Wm. F. Fuller to his son were competent testimony for the latter, because they not only showed the affectionate relation existing between them, but also stated what the former intended to do with his property.

There are several other alleged errors assigned; but, in our opinion, they are either not in fact such, or, if so, they were not of a character to prejudice the substantial rights of the appellant. For instance, it was competent for the appellee to ask the appellant's witness whether the deceased was mentally and physically competent to "take charge of a large business" in order to see to what extent the witness would go. It was immaterial, however, how the appellee was received by the appellant when he attended his father's funeral, and the court properly refused to let the witness Hodge answer the question: "State some persons whom you consider hard drinkers, and the effect upon them?" Nor do we think that the appellant could have been substantially prejudiced by the testimony relating to the deceased visiting the Fallis family, or the appellee's statement that when he lived at his father's, before his majority, his step-mother's treatment of him "was no more than a persecution; she always tried to provoke me to do something ill-natured;" or by the rejection of the letters offered by the appellant from the appellee to his wife, and from

the latter to her husband, and from Wm. F. Fuller to his wife, the appellant. We do not think the latter were incompetent upon the score of "*confidential communications;*" but none of them were material, save the one dated August 4, 1880. It is true that it states that the wife had never said anything to him as to his son, but it also uses language not fatherly, and of a violent character as to the son, while the record discloses that soon after that time he was writing to him in the most endearing terms, and it seems to us that the letter would have been more prejudicial than beneficial to the appellant. In any event, upon a view of the entire record, it is apparent that its rejection did not prejudice her substantial rights.

Judgment affirmed.