CASE 11—WILL CONTEST—MARCH 12.

# Bramel, &c. v. Bramel, &c.

### APPEAL FROM MASON CIRCUIT COURT.

1. WILLS—INSTRUCTIONS.—On the trial of a will contest, there being no question as to the execution of the will or of the presence of the attesting witnesses or their signatures, it was the province of the court to say whether the will was properly executed, and these things should not have been left to the jury; but this was not prejudicial to the rights of the appellants in this case, because the jury, by its verdict, found that the will was properly subscribed as required.

2. CREDIBLE WITNESSES TO WILL.—The word "credible" in the statute, requiring a will to be attested by two credible witnesses, is used in the sense of competent, and it is for the court to determine the competency of such witnesses, but the error in submitting it to the jury in this case was not prejudicial to appellants.

3. INSTRUCTIONS—PRACTICE.—Instructions given to a jury on a trial are to be considered as a whole, and omissions in one instruction may be supplied by reference to another; therefore, on the trial of a will contest where the jury was told in one instruction that they must find for propounders if they believed the testator to be of sound mind, and in another to find against them if they believed he was unduly influenced, the two instructions should be treated and construed together, although it would be better practice to have added to the last-named instruction the words "unless they believe as indicated in the other."

4. WILL CONTESTS—BURDEN OF PROOF.—On the trial of a will contest the burden as to the testamentary capacity of the testator is on the propounders until the establishment of a *prima facie* case; but after that the burden of showing that the testator was not in fact of sound and disposing mind and memory at the time the will was executed is shifted upon the contestants.

5. MENTAL CAPACITY NECESSARY—INSTRUCTION.—The capacity required of one in making a will exists when he has mind, memory and will enough to know his property and the natural objects of his bounty and his duties to them, and to understand that he is selecting the persons whom he wishes to have his

property, and to dispose of it in accordance with a settled purpose of his own.

E. L. WORTHINGTON FOR APPELLANTS.

1. The first instruction was erroneous and misleading, and calculated to confuse the jury by submitting an issue to them which the court afterwards passed upon. It left to the jury to pass upon the question whether the two witnesses to the will were credible witnesses or not, and thereby the idea was suggested to the jury that if these two witnesses testified that the decedent was of sound mind they must, if they were credible witnesses, so find. Ward v. Whipps, 16 Ky. L. R., 403; Fuller v. Fuller, 83 Ky., 345.

2. By instruction number one the jury was told to find for the will if they believed the decedent was of sound mind and the two witnesses were credible; in instruction number seven they were told in substance to find against the will if they believed it was obtained by undue influence. These instructions were conflicting and confusing, and it can not be reasonably assumed that the jury were of sufficient intelligence to supply the defects in the court's instructions.

3. The second instruction is erroneous because it told the jury that if they believed the instrument of writing consistent in its provisions and rational on its face that the presumption was that the decedent was of sound mind at the time of its execution, and that the burden then shifted to contestants to show that he was not of sound mind at that time. The burden of proof in such cases never shifts. Kentucky Wagon Manufacturing Co. v. City of Louisville, 17 Ky. Law Rept., 366; Greenleaf on Evidence, sec. ———; 1 Jarman on Wills, note, page 64, 6th Ed.

4. The case of Milton v. Hunter, 13 Bush, 171, does not decide that the burden of proof shifts, but merely that the propounders may rest their case on the statutory proof of execution of will.

5. Instruction number 3 attempting to define testamentary capacity in so far as it says that such capacity is "not necessarily such strength of mind as will enable a man to fairly contract with another at arms length" is erroneous. The decedent at the time of his death had estate worth from $50,000 to $75,000, and sixth instruction in effect said to the jury that he may be capable of disposing of this large estate with less mind than is ordinarily required in any every-day trivial business transaction.

6. The departure by the court from the use of the language "according to a fixed purpose," generally used in describing testamentary capacity, and substituting the words "a then settled purpose" was misleading and confusing. The word "then" before "settled" suggested to the jury the idea that if at the very moment of the execution of the will it was his settled purpose that was sufficient, whereas the rule is that he must have had a fixed purpose which had not recently or suddenly changed.

C. D. NEWELL ON SAME SIDE.

1. The first instruction was erroneous in submitting to the jury the question as to whether the subscribing witnesses were credible witnesses. The word "credible" is used in the statutes as synonym for "competent." Fuller v. Fuller, 83 Ky., 349.

2. Attesting witnesses of the will stand upon the same footing as all other witnesses in the case, and it was erroneous for the court to submit the question as to whether they were credible or not to the jury. The jury might very well have thought that if they found against the will they would necessarily find that the two attesting witnesses were not credible. Crandell's Appeals, 38 Am. St. Rept., 375.

3. Instructions numbers one and seven are contradictory. One directs the jury to find one way if they believe certain things, and the other directs the jury to find the other way if they believe certain other things. They might very well have believed both. Such instructions are certainly confusing and misleading.

4. To attempt under an instruction to define testamentary capacity by comparing it with other kinds of mental capacity is confusing and confounding to a jury.

5. The expression, "then settled purpose," substituted in the instruction for "fixed purpose," refers necessarily to flitting and momentary purposes, and lacks the characteristics of stability and decisiveness of fixed intention necessary to make any act by a man his deliberate purpose.

W. H. WADSWORTH, J. N. KEHOE, A. D. COLE OF COUNSEL ON SAME SIDE.

L. W. ROBERTSON FOR APPELLEES.

1. Modest persuasive argument addressed to the understanding, or mere appeals to the affection, do not constitute undue influence.

Bramel, &c. v. Bramel, &c.

By undue influence is meant an influence obtained by importunity and superiority of will and mind and character by which dominion over the will of the testator is acquired to such an extent as to destroy free agency; and this dominion must not only exist but must have been actually exercised. Wise v. Foote, 81 Ky., 15; Bush v. Lisle, 89 Ky., 401; Johnson v. Stivers, 95 Ky., 124; Barlow v. Walters, 16 Ky. Law Rept., 426.

2. Instructions given in this case when taken all together correctly expound the law as to testamentary capacity and undue influence. Wise v. Foote, 81 Ky., 15; Poschet v. Poschet, 82 Ky., 93; Fee v. Taylor, 83 Ky., 259; Fuller v. Fuller, 83 Ky., 351; Bush v. Lisle, 59 Ky., 401; Johnston v. Stivers, 95 Ky., 125; · Barlow v. Walters, 16 Ky. L. R., 426.

COCHRAN & SON on same side.

1. The propounders were the only ones who could have been prejudiced by the requirement of the instruction that the jury should believe that the witnesses were credible, as if they had not in fact believed that, under the instruction, they must have found against the will.

2. When instructions numbers one and seven are considered together, the jury could not have possibly misunderstood them. It must be presumed that the jury had ordinary common sense. But the instruction as to undue influence should not have been given at all, as there was absolutely no evidence tending to show undue influence, and nothing upon which to base such instruction.

3. At the outset of the trial in a will contest the burden is upon the propounders to show that the will in question was duly executed, and that the decedent was of sound mind, and is upon the contestant to prove that the will was obtained by undue influence. But if the propounders prove the due execution of the will, and that it is rational in its provisions, the presumption then arises that the testator was of sound mind, and the burden shifts to the contestants to show that he was not of sound mind. Hawkins v. Grimes, 13 B. M., 257; Milton v. Hunter, 13 B. M., 163; Flood v. Pragoff, 76 Ky., 611; Fee v. Taylor, 83 Ky., 259; Johnston v. Stivers, 95 Ky., 130; Barlow v. Walters, 28 S. W. Rept., 785.

4. It does not require as much mental capacity to make a will as is necessary to traffic in property or to manage it advantageously. Howard v. Coke, 7 B. M., 758; Wise v. Foote, 81 Ky., 10; Johnston v. Stivers, 95 Ky., 129.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

This is an appeal from a judgment of the Mason Circuit Court establishing a paper executed by John Bramel as his last will. He died in March, 1891, in the seventy-ninth year of his age. Although illiterate, he appears, from the evidence in the case, to have been a strong-minded, active and successful man of business, and at the time of his death he and his brother, Turner Bramel, had accumulated a considerable fortune. He had never been married, but for the last forty years of his life had lived with his brother, Turner, whose wife, Martha, attended to the housekeeping duties. The appellants contested the will upon grounds of want of testamentary capacity and undue influence. By his will he left his estate to the wife and four children of his brother Turner, with the exception of an insignificant legacy to a colored boy living on the place, and a legacy of $1,000 to a favorite grandniece. His surviving brothers, and the children of his deceased brother and sisters, were entirely omitted in the will. The testimony in the case is quite conflicting, and shows that he had been in failing health for some time prior to the making of the will, which was followed by his death about seven weeks later. He had grown feebler, and was disposed to make little physical exertion, and showed a tendency to dose at intervals, the symptoms being those which usually accompany old age.

The will was drawn by W. W. Ball and attested by Ball and Thomas Wells, who came to his place for the purpose, having been sent for, according to the testimony, by him. It appears by their testimony that he dictated the terms of the instrument to Ball; that after being written out it was read

over to him; he expressed his satisfaction with it, and signed it by mark in the presence of the attesting witnesses.

The contest was not instituted in the county court, nor, indeed, until some twelve months after probate.

Under the circumstances of this case—this will disposing of his estate in an apparently rational manner for the benefit of those with whom he had lived the greater part of his life, who had cared for him in his declining years, and with whom his relations necessarily were closer and more intimate than with anyone else—we should be slow to disturb the verdict of the jury sustaining the will, unless it was manifestly against the evidence, or unless for errors of law to the prejudice of appellant's substantial rights.    We can not say that the verdict was manifestly against the weight of the evidence.    On the contrary, the will itself was a rational one, such as a man in his circumstances might naturally be expected to make; and the circumstances proven in the case do not seem to us to show that any undue influence was exerted over the testator. So far as his testamentary capacity is concerned, the fact of his dictation of the will without, so far as appears from the evidence, any suggestion whatever by those present as to the disposition which he should make of his estate, is, of itself, evidence of a disposing mind, which would seem to require direct and specific evidence to the contrary to rebut it. Such evidence is not wholly lacking, but it is offset by much evidence, not only of parties directly interested in the result of the contest, but by disinterested witnesses. We are of the opinion that the verdict was not against the evidence, and we will, therefore,

consider the errors of law claimed to have been committed
upon the trial.

Numerous instructions were given and refused on both
sides, and, to those given, the court, of its own motion,
added two.

Instruction 1 is as follows: "If the jury believe from all
the evidence that the instrument of writing read in evidence
was subscribed by John Bramel in the presence of two credi-
ble witnesses, who subscribed it with their names in his pres-
ence, and that said John Bramel, at that time, was of sound
mind, they will find said instrument to be his will."

To this instruction the objection is urged that it was cal-
culated to confuse the jury by requiring them to decide issues
which should have been decided by the court; that it put
to them, first, the question whether John Bramel signed
the paper, and the further question whether the two wit-
nesses were present when he signed it, and signed it as wit-
nesses in his presence. There being no dispute about these
matters, it is argued that the court, and not the jury, ought
to say whether the paper was properly executed. This con-
tention is sound, upon the authority of Word v. Whipps,
16 Ky. Law Rep., 403. But in this case, as in the case cited,
the error was not prejudicial to the rights of appellants,
for the jury, by their verdict, found that it was so subscribed,
a conclusion to which the court must have come as a matter
of law. A further objection to this instruction is that it
required the jury to pass upon the question of whether the
attesting witnesses were credible witnesses or not, and that,
by coupling the question of credibility of these two witnesses
with the testamentary capacity of the testator, an advant-

age was given to the propounders of the will by giving undue weight and prominence to their testimony.

It is true that in the case of Fuller v. Fuller, 83 Ky., 345, this court held that the word "credible" was used in the statute in the sense of competent, and that it was for the court and not for the jury to determine the question of the competency of the attesting witnesses. In that case the propounders of the will complained of the submission of the question to the jury as requiring the jury to decide in their favor a question which, in that case, should have been decided in their favor by the court as matter of law. We can conceive that the jury might in some cases have been misled to the prejudice of the propounders by such an instruction, as it required them to satisfy the jury that the witnesses were credible; but we do not think that this error was prejudicial to the appellants. In the Fuller case the court refused to reverse, although the error in that case was against the propounders.

It is further urged that instruction 7 was erroneous as being inconsistent with instruction 1. That instruction was as follows: "If the jury believe from the evidence that the paper in contest was obtained by undue influence exerted on John Bramel, either by any of the beneficiaries named in the paper, or by any other person, then they will find that the paper in question is not the last will of John Bramel," following with the definition of undue influence.

Appellants claim that these instructions are contradictory; that in one they were instructed to find for the propounders, if they believed Bramel to be of sound mind, and in the other to find against them, if they believed he was un-

duly influenced. This court has often held that instructions given to a jury are to be considered as a whole, and that omissions in one instruction can be supplied by reference to another, and, while it would have been perhaps better to have added to instruction No. 1 the words "Unless they believe as indicated in Instruction No. 7," we do not think they could have misled the jury, even if we assume that the record discloses sufficient evidence of undue influence to form a basis for an instruction upon that subject.

Instruction No. 2, also complained of, is as follows: "If the jury believe from all the evidence that said instrument of writing is consistent in its provisions and rational on its face, the presumption is that said John Bramel was of sound mind at the time of its execution, and the burden shifts to contestants to show that he was not of sound mind at that time."

It is earnestly contended that the burden of proof does not shift, and, while this court has, in various cases, objected to the use of such phrases as "burden of proof" and "preponderance of evidence" in instructions to juries, their use is not necessarily reversible error.

Judge Marshall, in the case of Hawkins v. Grimes, 13 Ben. Monroe, 257, decided that "If upon the whole evidence, pro and con, it be doubtful whether the party be sane or not, then the presumption in favor of sanity may operate to decide the question otherwise in equipoise."

In the case of Milton v. Hunter, 13 Bush, 163, Chief Justice Lindsay condemned an instruction which placed the burden of proof as to testamentary capacity upon the propounders, in an opinion in which he used almost the exact phrase used

in the instruction complained of, saying: "When the pro-
pounders of a will have proved the due execution of a paper
not irrational in its provisions, nor inconsistent in its struct-
ure, language or details with the sanity of the testator, the
presumption of law makes out for them a *prima facie* case,
and the burden of showing that the testator was not in fact
of sound and disposing mind and memory at the time of the
execution of the will is shifted upon the contestants."

Judge Lindsay there held that the instructions under con-
sideration in effect took from the propounders the benefit
of the presumption of sanity.    So in the case of Flood v.
Pragoff, 79 Ky., 611, Judge Hines, delivering the opinion
of the court, said: "In fact it is not ordinarily necessary
that the propounders should show, as they did by attest-
ing witnesses, that the testator was of sound mind, provided
the statutory requirements were complied with, and there
is nothing in the paper when presented which is irrational
and inconsistent.    Then the burden shifts to the contest-
ants."

And in the case of Fee v. Taylor, 83 Ky., 259, Judge Holt
stated the law as follows: "When, however, the due execu-
tion of a paper, rational in its provisions and consistent in
its details of language and structure, has been proven the
propounder had made out a *prima facie* case, and the burden
of showing that the testator was not of a sound and dispos-
ing mind when the writing was executed, shifts to the con-
testant.    The third instruction given by the court conformed
to this rule."

The exact question raised in the case at bar was made in

the case cited, and decided contrary to the contention of ap-
pellants.

It is claimed, however, that in Johnson v. Stivers, 95 Ky.,
128, in an opinion by Judge Hazelrigg, the doctrine we have
stated was modified by saying: "The burden was on the pro-
pounders to show, by a preponderance of evidence, that the
testatrix was of testamentary capacity, and on the contest-
ants to show by a preponderance of testimony that she was
unduly influenced or coerced, as defined in the instructions,"
referring to the case of Fee v. Taylor, above cited, and other
cases.

The reference to Fee v. Taylor, in support of the opinion,
would clearly indicate that it was not intended to modify
the doctrine there laid down, and that the statement that the
burden as to testamentary capacity was on the propounders
referred to the establishment of a *prima facie* case.
And in Barlow v. Waters, (28 S. W. 785), this court,
in another opinion by Judge Hazelrigg, confirms our con-
clusion as to what was meant by the opinion in Johnson v.
Stivers by saying: "No. 7 places the burden of proof, as to
the execution of the paper in the manner defined in No. 1,
on the propounders, and the burden of showing undue in-
fluence or unsoundness of mind on the contestants. This
conforms to the rule laid down by this court in Fee v. Taylor,
83 Ky., 259, and Johnson v. Stivers, (95 Ky., 130.)"

While we think it better practice to instruct the jury that
if they believe from all the evidence the testator was of
sound and disposing mind, etc., they should find accordingly,
with, perhaps, a statement of the presumption of sanity, yet

the instruction given in this  case is, by the established rule
in the State, not reversible error.

Instruction No. 3, which begins by stating to the jury,
almost in the language used by Judge Simpson in Howard
v. Coke, 7 Ben. Monroe, 658, that "the soundness of mind
referred to in the instructions is not necessarily such strength
of mind as will enable a man to fairly contract with another
at arms length, or of trafficking in property and managing it
advantageously," is also objected to as misleading, because a
statement of a mere abstract proposition.    The instruction,
however, proceeds with a correct definition of the capacity
required to render a man mentally competent to make a
will.

And in Wise v. Foote, 81 Ky., 10, a case frequently re-
ferred to in later opinions of this court upon this subject,
almost the exact language of the instruction was used as a
correct statement of the law.    The latter part of this in-
struction is also complained of as by implication, stating to
the jury that the testator owed duties to the devisees named
in the paper. That part of the instruction is as follows:
"But the capacity required to render a man mentally com-
petent to make a will exists when the testator has will, mind
and memory to sufficiently understand that he is select-
ing the person or persons whom he wishes to have his proper-
ty , and to know his property and the natural objects of his
bounty, and his duties to them and to the persons upon
whom his property is bestowed by the testamentary paper
which he signs, and to make such disposition in accordance
with a then settled purpose of his own."

We do not think that this instruction was an instruction

that he owed duties either to the natural objects of his bounty or to the persons upon whom he bestowed his proper ty, but that it left the jury to decide the question of mental capacity to know whether or not he owed them duties, and must have been so understood by the jury. This part of the instruction is also in great part a quotation from Wise v. Foote, *supra*, to which this court referred with approval in Johnson v. Stivers, 95 Ky., saying: "The other instruc tions conformed to the law as laid down in Wise, &c. v. Foote, 81 Ky., 15."

The remaining objection to this instruction is that it uses the words "in accordance with a then settled purpose of his own" as carrying with them the idea of less permanence and stability than the words "fixed purpose." The words "fixed purpose of his own" have been often approved by this court in this connection, but we do not think the words used were or could have been understood by the jury to have a materially different meaning from the language which is more commonly made use of.

The objection is not well taken which is urged to the re fusal of the court to permit appellants to prove by appellee, Martha Bramel that on a former trial William Coleman, a devisee, testified to a certain conversation between the ap pellees, Martha and John W. Bramel. We can see no ground for the admission of such testimony. It was not an admission against interest by Coleman, but hearsay as to an admission against interest by Martha and John Bramel, nor do we think the other refusals to admit testimony were ma terial.

Wherefore, the judgment is affirmed.