CASE 28—CONTEST OF WILL—JUNE 7.

# Woodford, &c., v. Buckner, &c.

### APPEAL FROM BOURBON CIRCUIT COURT.

JUDGMENT FOR CONTESTANTS, AND WOODFORD AND OTHERS APPEAL. REVERSED.

WILL CONTEST—BURDEN OF PROOF—INSTRUCTIONS AS TO MENTAL CAPACITY—HARMLESS ERROR.

Held:  1. Where the due execution of a paper offered for probate as a will is proved, and the paper is not irrational in its provisions, or inconsistent in its structure, language, or details, the burden of showing that the testator was not of sound mind shifts to the contestants, and it is proper to so instruct the jury; and the burden is also upon contestants to show that the will was procured by undue influence.

2. An instruction telling the jury to find such paper to be the will of the decedent if they believe he had certain mental capacity, in effect places the burden of proof upon the propounders, and is therefore erroneous.

3. The fact that the propounders, after introducing the will, and proving its due execution by the attesting witnesses, introduced other testimony as to the mental capacity of testator, did not prevent the burden of proof from shifting to the contestants.

4. From an instruction directing the jury to find the paper in contest not to be the will of the decedent unless they believe from the evidence that he "had mind and memory enough to know his estate, the nature, value, and extent thereof, and to know his relatives, the natural objects of his bounty, and his obligations to them, and to dispose of his estate in a rational manner, and according to a fixed purpose of his own," the words "in a rational manner" should have been omitted.

5. The error in refusing to admit as evidence a letter tending to show the mental capacity of testator was harmless in view of the vast amount of testimony on that subject.

BECKNER & JOUETT, McMILLAN & TALBOTT, J. C. S. BLACKBURN, W. H. HOLT AND W. S. PRYOR, FOR APPELLANTS.

BRONSTON & ALLEN, T. E. ASHBROOK, E. M. DICKSON AND J. S. SMITH, FOR APPELLEES.

(No briefs in the record.)

Opinion of the court by CHIEF JUSTICE PAYNTER—Reversing.

On June 20, 1897, Thomas Woodford, a bachelor, died at the age of 73 years, leaving an estate of the value of more than $200,000. On April 23, 1897, he executed a paper, which is claimed by the appellants to be his last will and testament. His brothers, Sam, A. B. and Dr. Matt Woodford, survived him, as did also the sister, Lucy Buckner. His brother Sam is an old man, who seems to have accumulated a large estate, and divided it among his children. His sister, Lucy Buckner, is an old lady, and has a large estate. His brother, Dr. Matt, appears to be unfortunately addicted to the morphine habit, and the testator seems to have had the impression that he was as well off with a small as a large estate. He has nothing except what was given him by his sister, Lucy, and the testator. The testator gave him a life estate in a small farm, which he seems to have previously paid for, and allowed his brother to occupy it. He recited in the paper that his sister, Lucy, and brother, Sam, had ample means of their own. It appears from the will that he chose as a class his nieces and nephews, and made them equal in the distribution of his estate. Some of these nieces and nephews were children of deceased brothers and sisters, and others were the children of Lucy Buckner and his brothers, Sam and Matt. The will is contested upon the grounds that the testator did not have mental capacity to make it, or that it was obtained by undue influence. This court, in Broaddus' Devisees v. Broaddus' Heirs, 10 Bush, 299, and Bush v. Lisle, 89 Ky., 393 (11 R., 708) (12 S. W., 762), held there was no proof which tended to show a want of capacity in the testators to make wills, or that undue influence had operated in the execution of the wills; hence reversed the cases, and directed the wills to be probated.

In a very elaborate argument counsel for appellants insist that this court should reach the same conclusion from the facts of this case as was reached in the Broaddus and Lisle cases, and reverse the case, and order the will probated. We have reached the conclusion that we should not do this, but that there was sufficient testimony offered by the contestants (appellees) to allow the jury to determine whether the testator had mental capacity sufficient to make a will, and whether it had been obtained by undue influence. In view of the great volume of testimony, it would be useless to discuss the evidence offered with the view of giving the reasons which have brought us to the conclusion stated. The propounders proved the due execution of the will, and, as it is not irrational in its provisions, nor inconsistent in its structure, language or details, the presumption of law made out for them a *prima facie* case; and the burden of showing that the testator was not of sound and disposing mind and memory at the time of the execution of the will was upon the contestants. In Milton v. Hunter, (13 Bush, 170, the court condemned an instruction which altogether ignored the legal presumption of sanity, and said: "When the propounders of a will have proved the due execution of a paper not irrational in its provisions nor inconsistent in its structure, language or details, with the sanity of the testator, the presumption of law makes out for them a *prima facie* case, and the burden of showing that the testator was not in fact of sound and disposing mind and memory at the time of the execution of the will is shifted upon the contestants." In Howat v. Howat's Ex'r, (19 Kentucky Law Report, 756) (41 S. W., 771), the court, in discussing the question as to where the burden of proof rested, said: "The ruling of the court in refusing this last above instruction was not error,

as there was no testimony offered that contradicted in any way the testimony of the two attesting witnesses as to the execution, and their uncontradicted evidence made a *prima facie* case for propounders." In Boone v. Ritchie (21 Ky. Law Rep., 864, 53 S. W., 518), the court recognized the rule announced in Milton v. Hunter and Howat v. Howat's Ex'r, and condemned an instruction which reads as follows: "Unless the jury believe from the evidence that the testator, William Hill, was at the time of the alleged or claimed execution of the paper offered as his will of sound mind, they should find such paper not to be the last will and testament of said decedent." Hawkins v. Grimes, 13 B. Mon., 257; Flood v. Pragoff, 79 Ky., 607 (3 R.,372); King v. King (19 Ky. Law Rep., 868), (42 S. W., 347); Fee v. Taylor, 83 Ky., 259 (7 R., 248); Johnson v. Stivers, 95 Ky., 128 (15 R., 477), (23 S. W., 957), are in accord with the cases referred to.

The court gave the jury three instructions. No. 1 was as to mental capacity, and No. 3 on the question of undue influence. As we have said, the burden to show a want of mental capacity to make the will was on the contestants. The burden was likewise on them to show it was procured by undue influence. In the instructions mentioned, the court disregarded this rule. In instruction No. 1, the court said: "If they believe from the evidence that the decedent, Thomas Woodford, at the time he executed the paper, offered in evidence, dated April 23, 1897, and read to the jury, had mind and memory enough to know his estate," etc. By the language employed, the jury would infer that the burden was on the propounders to show that the testator had mind and memory enough to execute the will. It, in effect, told the jury that the burden of proof was upon the propounders to show mental capacity in the tes-

tator to make a will. Instruction No. 3 is subject to the
same criticism. It is urged by appellees that, if the in-
struction is subject to the criticism which we have made,
still it was not erroneous, in view of the fact that the pro-
pounders did not rest their case upon the introduction of
the will and proof of its execution by the attesting wit-
nesses, but, in addition to that, offered other testimony
tending to show the capacity of the testator to make
the will. The will not being irrational in its provi-
sions, and not inconsistent in its structure, language and
details, the uncontradicted proof of its execution by its at-
testing witnesses made out a *prima facie* case, and the pro-
pounders could have rested their case at that point, and
proper practice would have required them to do so. How-
ever, their failure to do that did not have the effect of
changing the law as to the burden of proof, nor of depriv-
ing them of the presumption in law of the testator's mental
capacity to execute the will.

The appellants offered an instruction which reads as fol-
lows: "If the jury believe from all the evidence that said
said instrument of writing is consistent in its provisions,
and rational on its face, then the presumption is that
Thomas Woodford was of sound mind when it was execut-
ed." This instruction is in accord with the opinion in Bramel
v. Bramel, 101 Ky., 64 (18 Ky. L. R., 1076), (39 S. W., 520). In
that case an instruction was given which reads as follows:
"If the jury believe from all the evidence that said instru-
ment of writing is consistent in its provisions, and rational
on its face, the presumption is that said John Bramel was
of sound mind at the time of its execution, and the burden
shifts to contestants to show that he was not of sound
mind at that time." The instruction given in the Bramel
case conforms to the rule announced in Milton v. Hunter;

Flood v. Pragoff; Fee v. Taylor; Barlow v. Waters (16 Ky. Law Rep., 426), (28 S. W., 785). Although the court in the Bramel case, said: "While we think it better practice to instruct the jury that if they believe from all the evidence, the testator was of sound and disposing mind, etc., they should find accordingly, with, perhaps, a statement of the presumption of sanity, yet the instruction given in this case is, by the established rule in the State, not reversible error." The instruction offered by the propounders in this case was evidently intended to meet the suggestion made by the court, because it followed the instruction in the Bramel case, except omitting "and the burden shifts to contestants to show that he was not of sound mind at that time." We are of the opinion that an instruction in the language used in the Bramel case, is a proper one, because it clearly tells the jury when the burden of proof shifts to the contestants, and therefore it would be proper to give an instruction in the language of the one in that case.

In instruction No. 2, the court defined testamentary capacity, and it reads as follows: "Unless the jury believe from the evidence that the said Thomas Woodford, at the time he executed the paper offered in evidence and read to the jury, had mind and memory enough to know his estate, the nature, value, and extent thereof, and to know his relatives, the natural object of his bounty, and his obligation to them, and to dispose of his estate in a rational manner, and according to a fixed purpose of his own, they ought to find said paper not to be the last will and testament of the said Thomas Woodford." The words "in a rational manner" should have been omitted from the instruction. This court, in King v. King, said: "To say the testator must dispose of his estate 'in a rational manner'

might, in some instances, mislead a jury; and, in our opinion, it is sufficient to require the testator to have such mental capacity as to enable him to know the objects of his bounty, and character and value of his estate, and to make a rational survey of his estate, and dispose of it according to a fixed purpose." This instruction might be improved by adding before the word "objects" the word "natural," so as to make it read "natural objects" of his bounty. While we do not say whether or not we would reverse the case because of the language in the instruction defining testable capacity, owing to the peculiar facts of this case, still, as there is to be a retrial of it, the court should follow the suggestions we have made.

We think the court erred in admitting the "Lizzie Lisle letter," but, owing to the fact there is a vast amount of testimony on the subject of mental capacity, we would not reverse the case on account of this error. The judgment is reversed for proceedings consistent with this opinion.