## Gernert, et al. v. Straeffer's Executor, et al.

(Decided February 9, 1915.)

### Appeal from Jefferson Circuit Court (Common Pleas Branch, Fourth Division).

1. Wills—Contest—Preliminary Proof for Propounders—Burden of Proof.—When the propounders of a will have proven the due execution of a paper not irrational in its provisions nor inconsistent in its structure, language or details with the sanity of the testator, they may rest their case without introducing any evidence as to the soundness of mind of the testator; but if the will is so irrational or inconsistent as to be incompatible with soundness of mind, the introduction of some evidence of mental capacity is necessary in the preliminary proof for the propounders.

2. Wills—Contest—Burden of Proof—Introduction of Evidence.—When the propounders have shown the statutory execution of the paper and also the soundness of mind of the testator, when the appearance of the paper makes necessary evidence of this character, they may rest their case and the burden of proving that the testator was of unsound mind when he executed the paper, or that its execution was procured by undue influence, shifts to the contestants, and after they have concluded their evidence the propounders may introduce further evidence in contradiction or rebuttal of the evidence offered by the contestants.

3. Wills—Contest—Instruction as to Execution of Paper.—An instruction telling the jury that they should find the paper to be the will unless they believed that when it was "signed" by the testator he was of unsound mind or under undue influence, was not

prejudicial in this case; but it is better practice to use the word "executed" in place of the word "signed."

4.   Wills—Contest—Evidence.—In a will contest it was not error to exclude evidence tending to show a parol agreement by which the testator promised to give to the contestants certain property, when it appeared that subsequent to this parol arrangement a deed was made conveying to him the property without any limitations or restrictions.

5.   Verdict—Right of Court to Make or Direct Correction of Defective.—It is usual and proper when a jury has returned a verdict that is merely defective in form for the court to send them back to their room so that they may correct it, or the judge may, if the verdict is a substantial response to the issues, correct informalities in it.

R. C. KINKEAD for appellants.

J. M. CHILTON and THOS. J. KNIGHT for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This is a will contest prosecuted by the four appellants, daughters of George Straeffer, deceased, for the purpose of having it adjudged that a paper probated in the Jefferson County Court was not in fact his last will.   On the appeal from the county court to the circuit court there was a trial, which resulted in a verdict and judgment sustaining the will, and the contestants are here as appellants asking a reversal of that judgment.

George Straeffer, who, according to all the testimony, was a very excellent man, was twice married. His first wife died in 1895, leaving surviving her six children born of the marriage with George Straeffer. Two of these children, on account of some property arrangement between themselves and their father, had no interest in the estate left by him at his death, and are not parties to this contest.   In 1901 Straeffer married the second time, and died in the latter part of 1912, leaving surviving him his second wife and the six children of his first wife.

It appears that in 1905 George Straeffer made a will, in which he gave to his wife his house and lot situated on Bonnycastle avenue, together with all of the furniture therein, and also all money that he might have after the payment of his debts.   To his four daughters he gave the other real estate owned by him, which consisted of a house and lot on Cherokee Drive, with directions that this property should be sold and the proceeds be divided between his daughters.

In 1910 he made a codicil, in which he directed that his wife should have the rent of the house on Cherokee Drive until it was sold, and also $500 out of the proceeds of its sale. On November 18, 1912, he made another codicil, in which, after reciting that he had sold the property on Cherokee Drive, he gave to three of his daughters, who were married, $100 each, and to his unmarried daughter $300. All the remainder of his property, real and personal, he gave to his wife.

At the time of his death he owned the house and lot on Bonnycastle avenue, worth about $3,200, and some $3,300 in personal estate, subject, of course, to the payment of funeral expenses, cost of administration, and the $600 devised to his daughters.

It appears that some time previous to his death, and after selling the Cherokee Drive property, he gave to his wife $2,100 out of the proceeds of this property. So that the amount of estate she received from him in the way of this gift and under his will amounts to something over eight thousand dollars.

The contest was directed to the codicil made in November, 1912, and this was attacked on the grounds that it was procured by the undue influence of his wife, and that the testator was mentally incapable of making at that time a disposition of his property. It is not seriously insisted by counsel for the contestants that there was not sufficient evidence to sustain the finding of the jury that the testator was capable of making this codicil and was not unduly influenced in its execution, but it is earnestly insisted that, on account of errors of law committed by the trial court, the judgment should be reversed.

The first error assigned is the failure of the trial court to sustain a motion for a peremptory instruction after the propounders of the will had rested on their preliminary evidence. It appears that the propounders, after introducing the will and proving its execution in accordance with the statute, rested without offering any evidence showing the mental condition of the testator at the time the will was executed, and it is the contention of counsel for the contestants that the preliminary burden of proof was on the propounders, not only to show the due execution of the paper, but the soundness of mind of the testator at the time he executed it.

In Milton v. Hunter, 13 Bush, 163, the court, in considering this exact question, said:

"When the propounders of a will have proven the due execution of a paper not irrational in its provisions nor inconsistent in its structure, language, or details with the sanity of the testator, the presumption of law makes out for them a *prima facie* case, and the burden of showing that the testator was not in fact of sound and disposing mind and memory at the time of the execution of the will is shifted upon the contestants. * * * The propounders may, if they see proper, rest their case on the statutory proof of due execution, and, if the will be rational, and the contestants introduce no proof tending to rebut the presumption of sanity on the part of the testator, the issue raised on this question by the law will usually be decided in their favor. It is usual and proper to interrogate the subscribing witnesses on this subject, and while this may be done without subjecting the propounders to the necessity of introducing all their proof in advance of an attack by the contestants, it is not absolutely essential in all cases; and when there is no proof on the question of sanity, or where the evidence leaves that question in doubt, the jury may resolve that doubt by acting on the legal presumption."

This practice was followed and approved in Flood v. Pragoff, 79 Ky., 607; Fee v. Taylor, 83 Ky., 259; Woodford v. Buckner, 111 Ky., 241; Bottom v. Bottom, 32 Ky. L. R., 494; Henning v. Stevenson, 118 Ky., 319; Watson v. Watson, 137 Ky., 25, and perhaps other cases. So that it may now be regarded as a closed question that when the propounders have proven the statutory execution of the will they may rest their case without then offering any evidence of the soundness of mind of the testator at the time he executed the paper, unless it be that the paper, on its face, shows that it is so irrational, or its provisions so inconsistent, or its structure, language or details so incompatible with soundness of mind, as to make necessary the introduction of some evidence of mental capacity. When a paper of this character is offered by the propounders they should, in addition to proving its statutory execution, introduce some evidence of the soundness of mind of the testator at the time of its execution.

The propounders may, however, if they desire, introduce preliminary evidence of the soundness of mind of the testator, although this is not necessary except

when the will itself falls within the description above referred to. When the propounders have shown the statutory execution of the paper, and also the soundness of mind of the testator when the appearance of the paper makes necessary evidence of this character, they may then rest their case, and the burden of proving that the testator was of unsound mind when he executed the paper, or that its execution was procured by undue influence, shifts to the contestants, and they must then introduce their evidence, and after they have concluded their evidence, the propounders may then introduce further evidence in rebuttal or contradiction of the evidence offered by the contestants.

It may here be observed that some confusion has crept into the practice as to the sufficiency of the preliminary proof by the propounders growing out of a reference in Bramel v. Bramel, 101 Ky., 64, to a statement in Johnson v. Stivers, 95 Ky., 128. In the Johnson case the court said: "The burden was on the propounders to show, by a preponderance of evidence, that the testatrix was of testamentary capacity, and on the contestants to show, by a preponderance of testimony, that she was unduly influenced or coerced, as defined in other instructions." In the Bramel case, in speaking of this language in the Johnson case, the court said "that the statement that the burden as to testamentary capacity was on the propounders, referred to the establishment of a *prima facie* case." But this expression in the opinion was evidently inadvertently made, as the practice, both before and since the decisions in Johnson v. Stivers and Bramel v. Bramel, has been as indicated in the cases before referred to. The will here in question not being irrational in its provisions, or inconsistent in its structure, language or details with the sanity of the testator, the propounders, in their preliminary proof, had the right to rest their case upon the introduction of evidence showing the statutory execution of the paper.

Another assigned error is that in the instructions the court told the jury that they should find the paper dated November 18, 1912, to be the will of George Straeffer, Sr., unless they believed from the evidence that "the codicil dated November 18, 1912, was signed when said George Straeffer, Sr., was under undue influence of some other person, as defined in instruction

number six, or it was signed when he was not of sound mind, as defined in instruction number five."

The objection to this instruction is that it uses the word "signed" when, as said by counsel, the word "executed" or the words "attested by the witnesses" should have been used in place of the word "signed." The uncontradicted evidence shows that the will was written in the presence of the testator, and was signed by him a few minutes after it was written, and his signature acknowledged by him in the presence of witnesses within an hour after it was made, and that it was attested by the witnesses at the time of its acknowledgment by the testator in their presence. So that the writing of the paper, the signing by the testator and the attesting by the witnesses may be treated as one act, and, therefore, in no event could the use of the word "signed" in this case have been misleading or improper.

Section 4828 of the Kentucky Statutes provides that: "No will shall be valid unless it is in writing, with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witnesses, who shall subscribe the will with their names in the presence of the testator."

It will, therefore, be seen that when the paper is not wholly written by the testator his signature must be made or the will acknowledged by him in the presence of two witnesses, so that when the paper is not wholly written by the testator, the fact that he signs it is not sufficient to establish its execution as a will unless it be attested in the manner provided by the statute. In other words, a will is not executed unless the paper conforms to the statute, and, therefore, we think it the proper practice to use the word "executed" in place of the word "signed," and generally this is the practice adopted by the circuit judges of the State: Hobson, Blain & Caldwell on Instructions, Section 629.

Another error complained of is the action of the trial court in excluding from the jury evidence of a parol agreement claimed to have been entered into between George Straeffer and his children, shortly after the death of his first wife, at a time when there was a division of the real estate of his first wife between the husband and the children.

The evidence excluded was to the effect that, in consideration of the conveyance by the children to George Straeffer, he agreed that he would will to his four daughters the house and lot on Cherokee Drive, or give to them its value if he sold it. Subsequent to this alleged parol agreement, and for the purpose of settling the estate of their mother, all of the children, as well as George Straeffer, their father, joined in an *inter partes* deed conveying to each of them in fee simple, and without any attached agreement, certain described property, a part of which was this house and lot on Cherokee Drive. The trial court, in excluding the evidence referred to, ruled that the previous parol agreement between the parties was merged in the deed, and we do not think this ruling was error. Looking at the matter from another aspect, this alleged parol agreement was made so many years before the execution of the will in contest that it could not be said to have any controlling relevancy upon the issues involved in the will contest.

The last ground of reversal relied on is that the trial court committed error in advising the jury as to the form of their verdict. It appears from the record that the jury returned a verdict reading, "We, the following jurors, find for the defendant." When this verdict was returned, the court stated to the jury that it was not in proper form and they should return a verdict in conformity with the instructions, which advised them that if they believed under the evidence that the papers offered were the last will of George Straeffer, they should so find, or if they believed that the paper dated November 18, 1912, was not his last will, they should so return. We find no objection to this practice. The jury, in finding "for the defendant," did, in fact, find for the will, but did not in proper form express their verdict. It is usual and proper when a jury has returned a verdict that is merely defective in form for the court to send them back to their room so that they may correct it, or the judge may, if the verdict is a substantial response to the issues, correct informalities in it. Tarlton v. Bricoe, 1 A. K. Mar., 67; Worford v. Isbel, 1 Bibb., 247; Crozier v. Gano, 1 Bibb., 257; Walter v. Louisville R. Co., 150 Ky., 652; Louisville Water Co. v. Scholtz, 140 Ky., 436.

The judgment is affirmed.