## Keene v. Herr, et al.

(Decided May 8, 1917.)

## Appeal from Daviess Circuit Court.

1. Jury—Selection of—Vacancies—How Filled.—Under the statute a regular jury panel may consist of not less than 24 persons selected from those drawn from the wheel, and when a vacancy in this panel does not at any time exceed three, the judge may summon bystanders to supply the vacancies, but not more than three vacancies can be filled by bystanders over the objection of the parties entitled to demand a jury trial. If more than three vacancies in the regular jury panel exist, then a sufficient number of names must be drawn from the jury wheel to fill the vacancies, or to so fill them as that there will be only three vacancies to be supplied by bystanders.

2. Jury—Selection of—Vacancies—How Filled.—When there is a partial panel consisting of as many as 21 drawn from the jury wheel, the judge may supply the three vacancies with bystanders, no matter how or from what cause these vacancies may have occurred at the beginning of the term or during the term.

3. Jury—Selection of—Vacancies—How Filled.—When it appeared that four of the regular jury panel of 24 that had been drawn from the wheel were absent from the court room, the judge had the right to draw from the jury wheel one juror and then select three bystanders to fill the remaining vacancies.

4. Wills—Contest—Evidence as to Value of Estate Owned by Parents of Contestant or Propounder Competent.—In a will contest case it is competent for either the contestant or the propounder to show the value of the estate owned by either the contestant or the propounder, but not to show the value of an estate owned by a remote relative, or the value of an estate that there was only a remote probability might fall into the hands of the contestant or the propounder.

5. Trial—Instructions—Must be Supported by Evidence.—It is not error to refuse an instruction on an issue when there is no evidence upon which to support the instruction.

BIRKHEAD & WILSON, LITTLE & SLACK, CLEMENTS & CLEMENTS, and BEN D. RINGO for appellant.

L. I. IGLEHEART, E. B. ANDERSON and W. P. SANDIDGE for appellees.

Opinion of the Court by Judge Carroll—Affirming.

This is a contest over the will of Sam T. Herr, an unmarried man, between his niece, Mrs. Keene, the appellant, and his brother, Hugh Herr, the appellee.

The testator gave all his property, consisting of a large estate, to his only brother, Hugh Herr. If he had died intestate, his property would have descended in equal shares, to his brother, Hugh Herr, and his niece, Mrs. Keene, the daughter of a deceased brother. The jury found for the will, and judgment was entered accordingly, followed by this appeal on the part of Mrs. Keene, the contestant.

The testator made his will in May, 1911, when he was about 48 years of age, and died in October, 1913. The grounds of contest were mental incapacity and undue influence, and it may here be said that the great weight of the evidence establishes that the testator was entirely capable of making the will and was not unduly influenced in its execution, so that there is no complaint about the sufficiency of the evidence to sustain the verdict, nor are the instructions given by the court open to objection.

The first ground of reversal relied on is that the jury were not selected and impaneled as required by the statute. Upon this point the facts shown by the record are these: When the case was called for trial the court directed the clerk to prepare a panel of twenty-four from which to select the jury, "and it was thereupon ascertained that only twenty of the regular panel of twenty-four jurors were present in court and qualified to serve as jurors upon the trial of this cause. The plaintiff thereupon moved the court that twenty-four names of jurors be drawn from the jury wheel and placed in the box from which to draw a panel of eighteen. This motion was overruled by the court, to which the plaintiff at the time objected and excepted. The name of one juror, J. R. Beck, Esq., was thereupon drawn from the wheel by the judge of the court and he was impaneled as a regular petit juror, and added to the twenty jurors theretofore found competent for service. The court thereupon ordered the sheriff to summon three bystanders to complete the number of twenty-four jurors whose names were to be placed in the jury box from which to draw the panel of eighteen. To this the plaintiff objected and excepted and renewed her motion for the names of twenty-four jurors to be drawn from the wheel and placed in the box from which the panel of eighteen should be drawn and made up, which motion was overruled. In obedience to the summons of the sheriff, three bystanders were thereupon called by the court and their names placed in the box, and from the names thus made up the clerk of

the court thereupon drew the names of eighteen jurors from the names so placed in the box, and the list so made up was furnished to the plaintiff and defendant, from which they were required to select a jury for the trial of this cause."

Section 2243 of the statutes provides, in substance, that at each term of circuit court the judge shall draw from the drum or wheel case the names of not less than thirty nor more than thirty-six persons to act as petit jurors, and from the list not less than twenty-four nor. more than thirty jurors shall be selected by the judge as the regular panel of the next petit jury. Under this section it is customary for the judge at the beginning of the term to select from the names so drawn from the jury wheel twenty-four men competent to serve as jurors, but if a panel of twenty-four cannot be secured from the list so drawn it is provided in section 2247 of the statutes, that "if there shall fail to attend, or there shall be excused by the court, for good cause, such a number as will not leave the number of jurors required, the judge shall draw from the drum or wheel case double the number of names to supply the places of such as are excused or fail to attend, and the jurors so drawn shall be summoned by the sheriff, . . . . and if, at any time during the term, it becomes necessary to supply one or more jurors, double the number of names necessary for supplying their places shall be drawn from the drum or wheel case and summoned by the sheriff: Provided, That when the number of vacancies does not exceed three, the judge may. direct the sheriff to summon bystanders to supply the vacancies."

Under these statutes a regular jury panel consists of twenty-four persons selected from those drawn from the wheel and when the vacancy in this panel does not at any time exceed three, the judge may summon bystanders to supply the vacancies, but not more than three vacancies can be filled by bystanders over the objection of either of the parties entitled to demand a jury trial. If more than three vacancies in the regular panel exist, then a sufficient number of names must be drawn from the wheel to fill the vacancies or to so fill them as that there will be only three vacanies to be supplied by bystanders. In other words, the chief purpose of the statutes in respect to the matter now under consideration was to give to every litigant an opportunity to have a jury panel on which there were not more than three bystand-

ers. When it appears that twenty-one of the names on the panel of twenty-four have been drawn from the jury wheel, a party cannot demand that the remaining vacancies, or any of them, shall be filled by drawing from the wheel. Except for the proviso in section 2247, allowing three bystanders to be empaneled, the judge would be compelled in every instance to draw from the drum or wheel case a sufficient number of names to supply vacancies in the regular panel, whether these vacancies appeared at the beginning of the term or at any time during the term, and the manifest purpose of adding the proviso allowing the selection of three bystanders to supply vacancies was to permit the judge, when he had a panel consisting of as many as twenty-one drawn from the jury wheel, to supply the three vacancies with bystanders, no matter how or from what cause these vacancies may have occurred, or whether they occurred at the beginning of the term or during the term; and as twenty-one of the members of the panel of twenty-four in this instance had been drawn from the jury wheel, the judge had the right to fill the three vacancies with bystanders. Louisville & Nashville R. R. Co. v. King, 161 Ky. 324; Brashears v. Combs, 174 Ky. 344; Winchester v. Watson, 169 Ky. 213; Louisville & Nashville R. R. Co. v. Jones, 164 Ky. 557.

Another assignment of error is the admission of evidence tending to show the value of the property owned by the mother of Mrs. Keene. It appears from the evidence that the mother of Mrs. Keene is a widow of considerable wealth, and Mrs. Keene is her only child, and it is also shown that Hugh Herr and Mrs. Keene have each large estates. On the trial of the case witnesses for the propounder were permitted to testify, over the objection of counsel for the contestant, as to the value of the estate owned by the mother of the contestant.

It is a very well-established principle in will contest cases that evidence may be introduced showing the financial condition of the contestants as well as that of the propounders, for the purpose of showing the reasonableness, or unreasonableness, as the case may be, of the will made by the testator, and for the further purpose of illustrating, so far as it may, his capacity or lack of capacity to make a will and his freedom from or coercion by undue influence in its execution. Under this rule no question could be made as to the competency of evidence

tending to show the value of the estate owned by Mrs. Keene and the value of the estate owned by Hugh Herr. Counsel for Mrs. Keene concede this, but insist that evidence of this character must be confined to the value of the estate owned by the contestants and the propounders and should not be extended to embrace an inquiry as to the value of the estate owned by any other person, however close of kin such other person might be to the contestants or the propounders.

When the grounds upon which evidence of this nature is admitted are inquired into, it will be seen that they are rested upon the theory that a testator who has natural objects of his bounty, some of whom are rich and others poor, some helpless and others capable, and some improvident and others prosperous, may naturally and reasonably in the distribution of his estate take into consideration the financial as well as the personal, physical and mental qualifications of the persons to whom he desires to leave his estate, so that each of them may receive such portion as a just and fair-minded testatoi would think equitable under all the circumstances. If a testator, for example, should disinherit poor or helpless kindred and bestow his bounty upon capable and prosperous relatives not more closely akin than those to whom he had not given anything, it would be a circumstance tending to show that he did not have mental capacity sufficient to enable him to know the natural objects of his bounty and his obligations to them, or that his will was procured by undue influence. On the other hand, if he should distribute his estate in an equitable and just manner between the natural objects of his bounty, taking into consideration their condition in life and the circumstances surrounding them, it would be a reasonable inference that he did know the objects of his bounty and his duty to them.

This being in a general way the theory upon which this character of evidence is found to be admissible, it seems to us that a testator, in coming to look over the conditions and circumstances surrounding those whom he desires to be the beneficiaries of his bounty, might very reasonably take into consideration not only the present value of the estate owned by each of them, but the value of such estate as in the natural order of things some of them might reasonably expect to receive; for example, such estate as in the ordinary and natural course of events one of them might receive from his father or his mother,

because it would be fair to assume that the estate owned by the father or the mother would ultimately go to the child. We do not of course mean to hold that it would be competent to show the value of an estate owned by a remote relative or the value of an estate that there was a mere probability might fall into the hands of a certain person, but when every probability as well as every reasonable expectancy, judged by the ordinary standards that prevail in human affairs, is that an estate will go in course of time to a designated person who may be either a contestant or a propounder, we think evidence of the value of such an estate is competent in order that the jury may understand and appreciate the influences that it may reasonably be supposed were operating on the mind of the testator when he came to distribute his estate, and have before them all the facts and circumstances surrounding him at the time he executed the will. Stutsman v. Sharpless, 125 Ia. 335; Rasdall v. Brush, 31 Ky. L. R. 1138.

Another complaint is that the trial judge during the progress of the case made from the bench many remarks tending to indicate to the jury that he was adverse to the cause of the contestant. We have examined with some care these remarks of the trial judge, which were occasioned by controversies between counsel concerning the admissibility or rejection of evidence, and our opinion is that the judge did not in these comments indicate his state of feeling toward either of the parties or the inclination of his mind as to the merits of the case. It is true he made too many comments in answer to arguments and objections of counsel, but we do not think they were at all prejudicial to the substantial rights of the contestant.

It is further complained that the court committed error in refusing to instruct the jury on the subject of an insane delusion that it is argued the testator had concerning Mrs. Keene's attitude towards the will of his father, as well as her personal ill feeling respecting him, and concerning a mistaken notion that it is said the testator had as to his title to 268 acres of land allotted to him in the division of his mother's estate; but a careful consideration of the evidence convinces us that it was not sufficient upon which to base the offered instructions, and so the trial judge did not commit error in this respect.

Upon the whole case, we think the trial was conducted without the commission of any error that prejudiced the substantial rights of the appellant, and the judgment is affirmed.