## Spradlin, Sr., et al. v. Adams, et al.

## Adams, et al. v. Spradlin, Sr., et al.

(Decided January 15, 1919.)

## Appeals from Johnson Circuit Court.

1. Wills—Contest—Burden of Proof.—Where the due execution of a paper, offered for probate as a will, is proved, and the paper is not irrational in its provisions, or inconsistent in its structure, language, or details, with the sanity of the testator, the burden of showing that the testator was not of sound mind shifts to the contestants.

2. Wills—Contest—Testamentary Incapacity—Question for Jury.— Where in a will contest the evidence on the question of testamentary incapacity was conflicting, the question was for the jury.

3. Wills—Contest—Undue Influence—Insane Aversion—Evidence— Sufficiency.—Where in a will contest the evidence of undue influence and insane aversion was sufficient merely to excite suspicion, and did not carry with it that quality of proof sufficient to induce conviction, there was no error in refusing to submit these questions to the jury.

4. Wills—Revocation—Revival.—On June 12, 1909, testator executed a will, devising the upper half of his home farm to Jincy Adams and the lower half to Charity Spradlin, for and during their natural lives with remainder to their children. On March 23, 1912, he married and on March 27th he executed a second will. By item one, he provided, "In a former will I have disposed of a portion of my real property to the heirs of John Q. Adams, the heirs of Charity Spradlin, and I desire to hold good and direct and that the court shall record the will containing these transfers." He then devised the remainder of his property to his wife. Held, that although the first will was revoked by the testator's marriage, the second will was so coupled with the first will that it should be

recorded as a codicil, and therefore sufficient under section 4834, Kentucky Statutes, to revive the first will.

5. Wills—Revocation—Revival—Subsequent Revocation.—After executing the first and second wills above referred to, the testator and his wife were divorced and compromised their property rights. Thereupon, he executed a third will, providing as follows: "Being of sound mind and remembering that I have heretofore executed a writing to Lina Spradlin, which is lost and which, after my death, might be termed a will, and not wanting it to give any trouble to my estate, or for the said Lina Spradlin to share in my estate, I now make and declare this to be my last will and testament, and direct and will that the said Lina Spradlin take nothing from my estate under said writing or otherwise, and I hereby revoke and cancel said writing or will." The first will was delivered to a bank and was in the possession of the bank at the time of testator's death. Just prior to his death, the testator executed a fourth will, devising certain town property and making no reference to his farm land. Held, in view of all the circumstances and of the language employed, that the testator intended, by his third will, to revoke only so much of his second will as applied to his wife, and that the third will did not have the effect of revoking that clause of the second will by which the first will was revived.

J. B. CLARK and A. J. KIRK for appellants, in case of Spradlin, Sr., &c. v. Adams, &c.

H. S. HOWES and VAUGHN & HOWES for appellees.

H. S. HOWES and VAUGHN & HOWES for appellants, in case of Adams, &c. v. Spradlin, Sr., &c.

A. J. KIRK, J. B. CLARK and A. D. COLE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming on the appeal of Andrew J. Spradlin, Sr., &c., and reversing on the appeal of Jincy Adams, &c.

On December 12, 1914, Daniel Spradlin died a resident of Johnson county. Several years prior to his death, William Adams, a neighbor and a remote kinsman, died leaving two children, John Q. Adams and Charity Adams. At the request of William Adams, Daniel Spradlin took these children into his home and reared them as his own. Before the execution of his first will, Daniel Spradlin divided his home farm equally between John Q. Adams and Charity Adams, giving to one the upper and to the other the lower half thereof. They each erected homes thereon and otherwise improved their respective tracts. Several

years before the death of Daniel Spradlin, John Q. Adams died leaving a widow, Jincy Adams, and two children, Miles and Frank Adams. Charity Adams married George Spradlin, by whom she had several children. Soon after the Civil War, Daniel Spradlin married Mary Fairchild, who died prior to the year 1909. No children were born of this marriage.

On June 12, 1909, Daniel Spradlin executed a will by which he devised to Jincy Adams, during her lifetime, providing she remained the widow of John Q. Adams, the upper one-half of his land located on Jennie's creek, with remainder to her children. He also devised the lower one-half of the land to Charity Spradlin for life, with remainder to her children.

On March 23, 1912, Daniel Spradlin married Lina Picklesimer. On the same day they entered into an antenuptial contract, and on March 27, Daniel Spradlin executed the following will:

"I, Daniel Spradlin, of Johnson county, Kentucky, being over twenty-one years of age, and of sound and disposing mind and memory, recognizing the shortness of life and the certainty of death, do make and ordain this my last will and testament in the name of God, Amen.

"Item 1. In a former will I have disposed a portion of my real property to the heirs of John Q. Adams, the heirs of Charity Spradlin, and I desire to hold good and direct and that the court shall record the will containing these transfers.

"Item 2. I direct that all my just debts and funeral expenses be first paid out of my estate.

"Item 3. I give and bequeath to my beloved wife, Lina Spradlin, all the rest of my real estate which I may be seized of at my death. (Provided that said Lina Spradlin provides me suitable necessities during my lifetime, such as clothing, food, medical attention, &c., and all things that a person of my age needs during life.)

"Item 4. After the satisfaction of my funeral expenses I give and bequeath all my personal property to my wife, beloved wife Lina Spradlin, this includes all the money I may have in the Paintsville National Bank, Paintsville, Ky., also $3,000.00 (three thousand dollars) in U. S. bonds at 2% twenty years time, and all the personal property I may be in possession of at my death.

"In witness whereof, I have hereunto set my hand at Paintsville, Ky., this 27th day of March, 1912."

After living together about fourteen months, he and his last wife were divorced. Thereupon, they entered into an agreement by which their property rights were fully settled.

On February 28, 1914, Daniel Spradlin executed another will, which is as follows:

"I, Daniel Spradlin, being of sound mind and remembering that I have heretofore executed a writing to Lina Spradlin which is lost and which, after my death, might be termed a will, and not wanting it to give any trouble to my estate, or for the said Lina Spradlin to share in my estate, I now make and declare this to be my last will and testament, and direct and will that the said Lina Spradlin take nothing from my estate under said writing or otherwise, and I hereby revoke and cancel said writing or will."

On the day before his death, Daniel Spradlin executed his fourth and last will, which is as follows:

"Know all men by this instrument of writing that I, Daniel Spradlin, of the county of Johnson and State of Kentucky, being in a sound state of mind, do hereby bequeath, or will my property in Paintsville, Ky., known as the Mart Preston property, one lot on the south side of front street, to Jincy Adams, Miles Adams and Frank Adams.

"They are to wait on me to see that I am cared for. All of my just debts and funeral expenses to be paid out of this property."

The first and fourth wills were probated by the county court of Johnson county. On appeal to the circuit court, certain collateral relatives of Daniel Spradlin contested the first will on the ground that it was revoked, and the second will on the grounds of testamentary incapacity, undue influence and insane aversion. The validity of the last will was submitted to the jury on the question of testamentary capacity, and the jury returned a verdict sustaining the will. At the same time, the court peremptorily instructed the jury to find against the first will on the ground that it was revoked by the testator's subsequent marriage. It was then adjudged that the fourth will was the last will of Daniel Spradlin, and from that part of the judgment the contestants appeal. It was

further adjudged that the first will was not the last will, or any part of the last will of Daniel Spradlin, and from this part of the judgment the propounders appeal.

Where the due execution of a paper offered for probate as a will is proved and the paper is not irrational in its provisions, or inconsistent in its structure, language or details, with the sanity of the testator, the burden of showing that the testator was not of sound mind shifs to the contestants. Milton, &c. v. Hunter, &c., 13 Bush 163; Woodford, &c. v. Buckner, &c. 111 Ky. 241, 63 S. W. 617. Here the due execution of the fourth will was satisfactorily proved and the evidence on the question of testamentary incapacity being conflicting the question was for the jury. We further conclude that the court did not err in refusing to submit the questions of undue influence and insane aversion to the jury, since the evidence bearing on these questions was sufficient merely to excite suspicion, and did not carry with it that quality of proof sufficient to induce conviction. Brent v. Fleming 165 Ky. 356, 176 S. W. 1134. Hence there appears no valid reason for disturbing the judgment sustaining the fourth and last will.

The ruling of the trial court that the first will of the testator was revoked by his marriage presents a more serious question.

Sections 4832 and 4834, Kentucky Statutes, are as follows:

"4832. Every will made by a man or woman shall be revoked by his or her marriage, except a will made in exercise of a power of appointment when the estate thereby appointed would not, in default of such appointment, pass to his or her heir, personal representative or next of kin.

"4834. No will or codicil or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived, otherwise than by re-execution thereof, or by a codicil executed in the manner hereinbefore required; and then only to the extent to which an intention to revive the same is shown thereby."

It is argued on behalf of contestants that the first will was revoked by the testator's second marriage, that the second will was not sufficient to revive the first will, and that, even if it was, the second will was revoked by the third will, thus leaving the first will unrevived. On the

other hand, the propounders claim that the first will was revived by the second will, and that the third will, fairly construed, did not have the effect of revoking the second will, in so far as it revived the first. It will be observed that by the first will, which was executed prior to the testator's second marriage, the testator devised certain lands to Jincy Adams and Charity Spradlin for life, with remainder to their children. The first clause of his second will, which was executed after his marriage, is as follows:

"In a former will I have disposed a portion of my real property to the heirs of John Q. Adams, the heirs of Charity Spradlin, and I desire to hold good and direct and that the court shall record the will containing these transfers."

He then proceeds to devise all the remainder of his property to his wife, Lina Spradlin. Here, then, we have a case where the second will, which was properly executed, not only recognized but declared the validity of the former will. After that it devised other property not mentioned in the former will. It will thus be seen that the second will purported to be coupled with the first will, and in our opinion should be regarded as a codicil. Crosbie v. Macdoual, 4 Ves. Jr., 610; Deppin's Trustee v. Deppin, 132 Ky. 762; Miller, &c. v. Miller, 108 Ky. 511, and therefore sufficient under the statute to revive the former will. That being true, it remains to determine the effect of the third will, and its effect must be measured by the intention of the testator. In determining this question it must be remembered that after the execution of the second will, the testator had been divorced from his wife and they had compromised their property rights. Under these circumstances, he executed the third will, declaring in substance that he had theretofore executed a writing to Lina Spradlin (his wife), which was lost and which, after his death, might be termed a will, and that not wanting that instrument to give any trouble to his estate or for his wife to share in his estate, he directed that his wife should take nothing from his estate under such writing or otherwise, and added these words, "And I hereby revoke and cancel such writing or will." In the same connection it must be remembered that the first will was delivered to a bank and remained there at the time of the testator's death. It is clear from the language

of the third will that the testator was viewing the second will only in the light of the provision therein made for his wife. He shows very plainly what he had in view by the execution of that instrument. He did not refer in any way to the second will as having made provision for Jincy Adams and Charity Spradlin, and their children. Not only so, but when he came to write his last will, he devised only the property in Paintsville and made no reference to the lands theretofore devised to Jincy Adams and Charity Spradlin and their children. Viewing the words of revocation contained in the third will in the light of the preceding words, and in the light of the testator's evident purpose to give his farm to Jincy Adams and Charity Spradlin and their children, we are forced to the conclusion that the testator intended to revoke only so much of his second will as made provision for his wife, from whom he had been divorced. Any other view would defeat the evident intention of the testator as manifested by the various wills which he executed, and the circumstances attending their execution. We, therefore, conclude that the third will did not have the effect of revoking that part of the second will which revived the first will, and that the chancellor erred in directing the jury to find that the first will was not the will of the testator.

On the appeal of Andrew J. Spradlin, Sr., etc., the judgment is affirmed. On the appeal of Jincy Adams, etc., the judgment is reversed and cause remanded for proceedings consistent with this opinion.