## Irvine v. Greenway, et al.

(Decided March 18, 1927.)

(Rehearing Denied, with Modification, June 24, 1927.)

### Appeal from Madison Circuit Court.

1. Wills.—In proceedings under Ky. Stats., section 4861, by person formerly proceeded against as nonresident to impeach decision admitting will to probate and procure retrial, only parties necessary to be joined were persons claiming under will with whom petitioner's claim conflicted.

2. Trial.—That sufficient facts were not shown by proponents in proceedings to establish will held not ground for reversal, despite court's refusal of peremptory instruction, where contestant, after denying of motion, introduced testimony supplying facts not shown by proponents' evidence.

3. Appeal and Error.—Erroneous admission of evidence, where not prejudicial, does not warrant reversal of judgment.

4. Wills.—Rejecting evidence of comparative financial condition of contestant and legatee, offered to prove testatrix's want of mental capacity, in not knowing objects of her bounty, by omitting contestant, held not error, where legatee alone would have inherited in event of intestacy, though legatee and contestant were of same degree of kinship.

5. Wills.—Testimony of contestant that testatrix repeatedly told him farm belonged to his father and himself under her husband's will

held inadmissible in will contest, in absence of any statement as to what testatrix, who had property during lifetime with power of disposition, intended to do under her own will.

6. Wills.—In will contest, where letter of testatrix had been read to jury, in which she complained of certain things said by person whom she made beneficiary, refusing to allow beneficiary to deny statement held not error, where statement in no way affected contestant.

7. Evidence.—In will contest, testimony of witness as to testamentary capacity held properly excluded, where witness was not shown to have had sufficient acquaintance with her to qualify on subject.

8. Evidence.—In will contest, evidence of witnesses that testatrix was childish held properly excluded, as mere conclusion.

9. Evidence.—Province of witness is to detail facts; drawing of conclusions being for jury.

10. Wills.—Exclusion of testimony of witness that on making certain settlement with him for services testatrix was excited held not prejudicial to contestant in will contest, where witness had previously made same statement to which no objection was interposed.

11. Trial.—In will contest refusing instruction that, if jury did not believe writing to be consistent in its provisions and rational on its face, they should not find it to be decedent's will, held properly refused, because calling jury's attention directly to provisions of will and its consistency; it being error to single out and give undue prominence to any portion of evidence.

12. Wills.—Instruction in will contest, permitting jury's consideration of testatrix's mental capacity as to particular part of will, under Ky. Stats., section 4859, held properly refused, where no claim of undue influence was asserted.

13. Wills.—Mental incapacity to execute will at time of composition of particlar part does not avoid will, where testatrix on executing it possessed requisite capacity, thereby ratifying part formerly composed.

14. Wills.—Will should be admitted to probate, as against claim of want of testamentary capacity, unless testator at time of execution did not have sufficient mental capacity to enable him to know natural objects of his bounty and to dispose of it according to his own fixed purposes.

15. Trial.—In will contest, 9 or more jurors could make valid verdict though, if fewer number than 12 agreed, those agreeing were required to sign verdict.

16. Wills.—In will contest, statement of counsel as to effect of jury's verdict on other provisions of will held nonprejudicial, where contestant objected, and court instructed jury to disregard such statement.

17. Appeal and Error.—In will contest, contestant, who, knowing juror had copy of newspaper containing account of former disposition of issues in proponents' favor, failed to call matter to court's

attention, or ask jury's discharge, could not complain thereof on appeal.

18. Trial.—Testimony of juror that another member of jury brought in newspaper containing account of former disposition of issues and argued therefrom as to verdict could not be considered to explain grounds of decision or impeach validity of finding.

19. Torts.—Proponents of will could not recover damages from contestant by virtue of loss through litigation, where contestant asserted claim to valuable property under will of testatrix's husband which contestant would have received if testatrix had died intestate.

20. Appeal and Error.—Court's authority on appeal extends merely to correction of errors preserved by record which are prejudicial to substantial rights of complaining parties, in view of Civil Code of Practice, sections 134, 338, 756; Court of Appeals having no authority to retry case.

JOHN NOLAND and BENTON & DAVIS for appellant.

GRANT E. LILLY and BURNHAM & GREENLEAF for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

From a judgment establishing a certain paper as the will of Elizabeth S. Irvine, the contestant, David Irvine, has prosecuted this appeal. On April 7, 1885, William M. Irvine died, and shortly thereafter a paper was probated as his will. The rights of David Irvine arise under the second clause of that instrument, in which we find the following:

"2d. I give to Irvine White my nephew of Huntsville, Alabama, my farm adjoining the town of Richmond, Ky., containing over 200 acres and situated in the forks of the Richmond and Barnes Mill Turnpikes to use and enjoy the profits of during his natural life and at his death the title in same to his second son David Irvine provided he drops the White from his name and takes that of his grandfather, David Irvine."

In a previous clause of his will, William M. Irvine had devised all of his property to his wife, Elizabeth S. Irvine, and had further provided:

"In the event, however, that she, my wife, dies intestate and without making any disposition of my estate, then I provide that my estate shall be divided as follows."

William M. Irvine then proceeded to make a disposition of his property that would be effective in event his wife died intestate, and, among the other devises made by him, we find what we have copied above from section 2 of his will relative to David Irvine, who was then David Irvine White, but who has since, by proper legal proceedings, had his name changed to David Irvine, and he is so known in this record. Elizabeth S. Irvine lived for 35 years after the death of her husband. She died on November 25, 1920. On December 6, 1920, the paper in question was admitted to probate by the Madison county court as her will. A few days thereafter, David Irvine White, a nephew of Elizabeth S. Irvine, prosecuted an appeal to the Madison circuit court from the order probating the paper in question as the will of Elizabeth S. Irvine. On January 26, 1921, David Irvine White entered into a written contract or agreement with John W. Crooke, who had qualified in the Madison county court as the executor of Elizabeth S. Irvine under this paper. Pursuant to and as a result of that contract, the appeal of David Irvine White, contesting said paper, was dismissed on February 18, 1921, and immediately after that a suit was filed by the executor, Crooke, in which he sought to obtain a construction of three wills: First, a construction of the will of David Irvine, Sr.; second, that of his son-in-law, William M. Irvine; and third, a construction of the will of Elizabeth S. Irvine, who was a daughter of David Irvine, Sr., and the wife of W. M. Irvine, and whose will is the one here in question. An issue in that case arose between William Irvine Greenway, on one side, and David Irvine White and the latter's son David Irvine, upon the other. That case has reached this court twice. See Greenway v. White, 196 Ky. 745, 246 S. W. 137, 32 A. L. R. 1385, and White v. Greenway, 209 Ky. 368, 272 S. W. 920. After that case had been decided, the appellant here, David Irvine, as sole contestant, prosecuted a second appeal from the order of the Madison county court probating the paper in contest as the will of Elizabeth S. Irvine, and it might be of interest to narrate the various steps taken upon this second contest, but that would do no good, as it never progressed to the point of a trial, and was finally dismissed by David Irvine, the appellant here.

In the original contest of this will, begun in December, 1920, by David Irvine White, his son, the appellant here, David Irvine, had been named as an appellee and

had been proceeded against in that contest (of 1920) as a nonresident. After dismissing the second will contest, the one which he had begun, David Irvine, on May 12, 1923, filed in the Madison circuit court a petition in equity under section 4861, Ky. Stats., which section is:

> "Any person interested who at the time of the final decision in the circuit court resided out of this state and was proceeded against by warning order only, without actual appearance or being personally served with process, and any other person interested who was not a party to the proceeding by actual appearance or being personally served with process may within three years after such final decision in the circuit court, by petition in equity, impeach the decision and have a retrial of the question of probate; and either party shall be entitled to a jury for the trial thereof? An infant not a party, shall not be barred of such proceeding in equity until twelve months after attaining full age."

By this petition, David Irvine sought to impeach the order of February 18, 1921, by which the contest instituted by his father was dismissed and to secure a retrial of the question of the probate of the will of Elizabeth S. Irvine. By the provisions of section 4862, Ky. Stats., this proceeding could not operate further than made necessary by the rights of David Irvine, and as his rights under the will of his great uncle, William M. Irvine, clashed with the rights of his cousin, William Irvine Greenway, under the will of their aunt, Elizabeth S. Irvine, and no one else, it was not necessary that any one else be made a party to this equitable action, and no one except Greenway and the executor of the will was made a party. Greenway and the executor filed what they call an answer, counterclaim, and cross-action, in which they presented a number of technical questions, but one of which (discussed later in this opinion) is it necessary for us to consider or determine, for the court decided in favor of David Irvine on these questions, and a jury trial was had to determine whether or not the paper that had been probated by the Madison county court was the will of Elizabeth S. Irvine, and the jury found that it was. The judgment was entered accordingly, and David Irvine has several reasons for which he says this judgment is erroneous, and these we shall now discuss.

On the trial of this action, the propounders of the will introduced two witnesses by whom they established that the paper in question was entirely in the handwriting of Elizabeth S. Irvine. Then the paper was introduced, and, after it had been read to the jury, the propounders rested, whereupon David Irvine, contestant there and appellant here, moved the court to instruct the jury peremptorily to find for him. This motion the court overruled, and this is the first alleged error of which he is complaining. The paper in question was a rather lengthy and rambling sort of document, and constitutes 30 pages of the record before us. The contestant has cited the cases of Hawkins v. Grimes, 13 B. Mon. 257; Milton v. Hunter, 13 Bush, 163; Flood v. Pragoff et al., 79 Ky. 607; Fee et al. v. Taylor et al., 83 Ky. 259; Boone et al. v. Ritchie et al., 53 S. W. 518, 21 Ky. Law Rep. 864; Woodford et al. v. Buckner et al., 111 Ky. 241, 63 S. W. 617, 23 Ky. Law Rep. 627; Dunaway et al. v. Smoot et al., 67 S. W. 62, 23 Ky. Law Rep. 2289; Henning et al. v. Stevenson, 118 Ky. 318, 80 S. W. 1135, 26 Ky. Law Rep. 159; Bottom v. Bottom et al., 106 S. W. 216, 32 Ky. Law Rep. 494; Spradlin v. Adams, 182 Ky. 716, 207 S. W. 471; Wood v. Corcoran, 190 Ky. 621, 228 S. W. 32; Gernert v. Straeffer's Ex'r, 162 Ky. 605, 172 S. W. 1044. On these authorities he contends that this paper was so irrational in its provisions, so inconsistent in its structure, language, and details, with the sanity of the testatrix as to be incompatible with soundness of mind, and that, in view thereof, it was not sufficient for the propounders to merely prove that this was in her handwriting, but that the propounders should then have gone further with their proof and established by proof that Elizabeth S. Irvine, at that time, had testamentary capacity. It is not necessary for us to decide, however, whether or not the propounders had at that time made out a case, for the contestant did not elect to stand upon the record as then made, but, after his motion was overruled, introduced his evidence. The rule in this state under such circumstances is:

"Where the defendant moves for a peremptory instruction at the conclusion of the plaintiff's evidence, and his motion being overruled, introduces his testimony, if that testimony supplies any fact or facts not shown by the evidence for the plaintiff, and thus makes out a case, this court will not reverse

because these facts were not shown by the plaintiff before the motion for a preremptory instruction was made. Cincinnati, N. O. & T. P. R. Co., etc., v. Cook's Adm'r (73 S. W. 765) 24 Ky. Law Rep. 2152; Gordon v. Commonwealth, 146 Ky. 61, 141 S. W. 1186.'' Caldwell's Jud. Dic. p. 2563.

The action of the trial court in admitting and excluding evidence is also relied on to reverse the judgment, but an examination of the record has convinced us that none of the evidence admitted by the court under the first part of this objection was erroneously done. But, if in some instances it were otherwise, the testimony was immaterial and not prejudicial, and it is quite manifest from the record that it discloses no ground for a reversal of the judgment because of the admission of incompetent testimony.

Under that part of this objection relating to the exclusion of testimony offered by appellant, the chief complaint is that the court refused to permit him to prove his and the appellee's financial condition, and to sustain this objection reliance is had upon our opinions in the cases of Hinning v. Stevenson, 118 Ky. 318, 80 S. W. 1135, 26 Ky. Law Rep. 159, Rasdall v. Brush, 104 S. W. 749, 31 Ky. Law Rep. 1138, and Keene v. Herr, 175 Ky. 462, 194 S. W. 538. The ground for the admission of such testimony is that it has at least a remote bearing on the testamentary capacity of the testator, in that it has a tendency to show his conceptions of his duty to the objects of his bounty, and as between the latter, in the relationship of contestant and contestee of the will, the cases referred to hold such testimony competent, and especially so when the objects of the testator's bounty, and who are adverse parties to the contest, sustain the same relationship to him, but whether confined to relationships of the same degree it is not necessary now to determine. The theory, we repeat, for the admission of such testimony, is to show that a testator without apparent reason discriminated against an object of his bounty possessing small means and in favor of one similarly related who was the possessor of large means, and from which it might be inferred that in doing so the testator did not fully comprehend his duty to such objects of his bounty. In this case, the appellant, David Irvine, and the appellee, William Irvine Greenway, are of the same degree of kindred to the testatrix. David Irvine is the son of her living nephew, David

Irvine White, while William Irvine Greenway is the son of her deceased niece, Alice W. Greenway. Thus we see that, if Mrs. Irvine had merely directed by her will that all of her property, including the property willed her by her husband, William M. Irvine, should pass under our statutes of descent and distribution, appellant, David Irvine, would have taken nothing, as his father is now living, but Greenway would take in that event, as his mother is dead. This is not a case where the testatrix has disinherited one of those who would, without her testamentary disposition, take a portion of her property, and enriched another, but by her will she has simply given to one who would have inherited from her anyway, and failed to give to one who would not have done so, because his father was living, and a discrimination in her will as between them could not and would not be of any probative force upon the issue of her mental capacity when she executed the will, and thereby effectuated such discrimination, if any. Therefore the very ground for the admission of such testimony is lacking in this case, and we do not think the court erred in excluding the testimony complained of under this objection.

The court excluded from the jury the testimony of James Walker that Mrs. Irvine had repeatedly told him the farm belonged to David Irvine White, and to the appellant under her husband's will. If she had ever said anything about what she intended to do with this farm in her will such a statement would be admissible, as showing a fixed intention, but it was no evidence of her fixed intention when she merely stated to this witness something which was then a public record and constructively known to every one.

A letter written by Mrs. Irvine was read to the jury, in which she complained of certain things she had heard had been said by Richard Miller. Miller was called as a witness to deny making this statement, but was not permitted by the court to do so. This statement in no way affected the appellant, and it was properly excluded. Mrs. Irvine apparently discovered her error, for she made Miller the beneficiary of four substantial bequests in her will.

The testimony of T. S. Todd, relative to Mrs. Irvine's testamentary capacity, was properly excluded, as the witness was not shown to have had sufficient acquaintance with her to qualify him as a witness upon that subject. The testimony of W. L. Leeds that Mrs. Irvine

was childish was properly excluded. That was merely a conclusion on his part. The court allowed the witness to testify in detail to the things said and done by Mrs. Irvine on which he based this conclusion. That was properly done. It was for the witness to detail the facts and for the jury to draw the conclusions. E. Selby Wiggins testified to making a settlement with Mrs. Irvine, and to giving her a receipt in full for his services, which she had prepared. He said she was excited, and upon motion of the propounders the court excluded the statement, "She was excited." We can see nothing in that prejudicial to the contestant. Moreover, this witness had previously made the same statement, and there had been no objection to it. If it was of any importance to show by this witness that Mrs. Irvine was excited, that had already been done. This disposes of all the objections raised to the evidence, and brings us to the instructions. The contestant offered these instructions:

"Unless the jury believe as stated in the second instruction, they should find the writing read in evidence and which purports to be the will of Elizabeth S. Irvine to be her last will and testament, but this instruction is given subject to this qualification: If the jury do not believe that said writing is consistent in its provision and rational on its face, they should not find said writing to be the last will and testament of Elizabeth S. Irvine, unless they believe from all the evidence that at the time she signed said writing she had sufficient mind and memory to know the natural objects of her bounty and her obligations to them and to take a rational survey of her estate, and know its extent and value, and to dispose of it by will according to a fixed purpose of her own.

"(2)  If the jury believe from the evidence that Elizabeth S. Irvine at the time she signed said writing did not have sufficient mind and memory to enable her to know the natural objects of her bounty and her obligations to them, and to take a rational survey of her estate, and know its extent and value, and to dispose of it by will according to a fixed purpose of her own, they should find and so state in their verdict that the said writing to the extent that it attempts to revoke that provision of the will of William M. Irvine, which, after the death of his wife, gives the farm mentioned in the second clause of Wil-

liam M. Irvine's will to David Irvine White during his natural life and at his death to his second son, David Irvine, is not the last will and testament of Elizabeth S. Irvine.''

The court declined to give them. He has cited the cases of Dolfinger v. Fishback, 12 Bush 474; Sioux City & Pac. R. Co. v. Stout, 84 U. S. (17 Wall.) 657, 21 L. Ed. 745; Scheben v. Geo. Wiedemann Brewing Co., 161 Ky. 413, 170 S. W. 948; Louisville & N. R. Co. v. Spears' Adm'r, 192 Ky. 64, 232 S. W. 60; Bramel v. Bramel, 101 Ky. 64, 39 S. W. 520, 18 Ky. Law Rep. 1074; Woodford et al. v. Buckner et al., supra; Henning v. Stevenson, supra; Farmers' Bank & Trust Co., Ex'r, et al. v. Harding et al., 209 Ky. 3, 272 S. W. 3; Wills et al. v. Tanner, 18 S. W. 166, 13 Ky. Law Rep. 741; Randolph v. Lampkin, 90 Ky. 551, 14 S. W. 538, 12 Ky. Law Rep. 517, 10 L. R. A. 87. Upon the authority of these cases, he insists that the refusal of the court to give the instructions he had tendered was erroneous, but we are not able to agree with him.

Instruction No. 1, tendered by appellant, was erroneous, among other things, in that it authorized a rejection of the will if the jury believed as set out in instruction No. 2, the latter of which was itself erroneous, as we will now proceed to point out. The effect of this instruction was to confine the verdict of the jury to that portion of the will disposing of the tract of land in contest between appellant and appellee; it being insisted that under the provisions of section 4859 of the Statutes the appellant had the right to require the jury to determine the mental capacity of testatrix in the execution of any particular clause, section, or part of her entire will, and in support of that general proposition counsel cite and rely, not only on the section referred to, but also upon the Henning case, supra, and those of Wills v. Tanner, 18 S. W. 166, 13 Ky. Law Rep. 741; Randolph v. Lampkin, 90 Ky. 551, 14 S. W. 538, 12 Ky. Law Rep. 517, 10 L. R. A. 87, and also three cases from other jurisdictions. But a reading of the cited domestic cases does not sustain counsel's position. The judgment in the Wills case was reversed because the court declined to give an instruction offered by contestant, saying:

"The jury are instructed that, if they find from the preponderance of the evidence that any clause of the paper purporting to be the last will of John G. Wills was procured by the undue influence, as ex-

plained in the second instruction, of the person or persons taking under said clause, or others acting in concert with such person or persons, they should find that such clause of said paper is not the true last will of John G. Wills.''

It will therefore be perceived that the authority for the jury to reject portions of the will was, in that case, bottomed solely upon the contest grounds of undue influence, and nowhere in that opinion is it intimated that such a divided verdict might be rendered when the only ground of contest, as is true here, was mental incapacity.

The opinion in the Lampkin case, as reported in 10 L. R. A. 87, contains a clause not found in other publications of it. However, it is stated in our publications of it (90 Ky. 551, and 12 Ky. Law Rep. 517) that there was no evidence in the case of mental incapacity, and the additional language found in the report as made in 10 L. R. A. 88, is:

"Moreover, the verdict of the jury has settled the question of testamentary capacity, as well in favor of appellants as of the other devisees, and the issue has been narrowed to the single inquiry whether the will was procured by undue influence; for, while a will may be valid as to one devisee, and, on account of undue influence, invalid as to another, one portion of it cannot be rejected merely for want of sufficient testamentary capacity, while another part, written at the same time, and no more plainly expressed, is adopted as his last will.''

As published in our publications it is pointed out that the verdict of the jury was bottomed on the contest ground of undue influence. So that the domestic cases relied on by counsel do not sustain his contention. On the contrary, the Lampkin opinion, without the clause found in 10 L. R. A. 87, would seem to be confined to the contest ground of undue influence, since the rejected instruction related exclusively thereto, and as published in 10 L. R. A. 87, it expressly holds that the separate clauses of a will executed at the same time may not be rejected upon the ground of incapacity.

Moreover, the same section of the statute was involved in the case of Hildreth v. Hildreth, 153 Ky. 597, 156 S. W. 144, and its application to the contest ground of

mental incapacity, and the authority of the jury to uphold or reject parts of the will on the ground of mental incapacity, when all of it was executed at the same time, was thus commented on in that opinion:

"It is difficult to understand how one part of the will could be rejected for want of testamentary capacity on the part of the testator, and another part of it, made at the same time and no more plainly expressed, be admitted to probate."

—although it was further said that such a case might arise under peculiar facts not developed by that case. Substantially to the same effect is the case of Underhill v. Underhill, 29 S. W. 638, 16 Ky. Law Rep. 717. In this case, as we have said, the only ground of contest was testamentary incapacity of the testatrix, Mrs. Irvine. No reliance whatever was had upon undue influence exercised upon her in making her will.

Moreover, the contest in this case was directed to the will as an entirety, and it was expressly alleged by appellant, in his contesting petition filed under the statute giving him the right of contest, that the testatrix was mentally incapacitated to execute her will at the time she did, and the evidence and the instructions were properly directed to her mental condition at that time, regardless of its condition at any other time, when she may have composed some parts of her will; for if she, forsooth, was mentally incapacitated at the time she did such composing, but possessed the requisite capacity at the time she executed her will, and thereby ratified such former composing, the requirements of the law were met. We therefore conclude that the court did not err in refusing the instructions offered by counsel for appellant.

The instructions given were:

"(1) The jury will find the paper read in evidence and which purports to be the last will of Elizabeth S. Irvine to be the last will and testament of said Elizabeth S. Irvine unless they believe as set out in the second instruction.

"(2) If the jury believe from the evidence that Elizabeth S. Irvine at the time of the execution of the paper, did not have such mental capacity as to enable her to know the natural objects of her bounty and her obligations to them, to take a reasonable

survey of her estate, and to know its extent and value, and to dispose of it according to a fixed purpose of her own, they will find the paper not to be the last will of said Elizabeth S. Irvine, and in determining this question the jury will consider all the evidence before them including the paper itself and the nature of its provisions.

"(3) Nine or more jurors concurring may make a valid verdict, but, if a fewer number than 12 agree, those so agreeing must sign the verdict."

These instructions correctly submitted to the jury the issues to be determined.

His next complaint is of misconduct of counsel for Greenway, in arguing the case to the jury. That misconduct consisted in a statement by counsel for the executor about the effect of the jury's verdict, but the record shows that, when the contestant objected, the court then instructed and directed the jury to disregard and not to consider any statement that had been made by any attorney in his argument as to what the effect the verdict of the jury would have upon the other provisions of the will, and that the court would take care of that question after the verdict was returned, and, it further appears from the record, that the attorneys for the contestant had been rather free in expression of opinions, and in making statements about what the effect of the jury's verdict would be, so that we are unable to find any error in that.

It seems that one member of the jury had with him a copy of a newspaper containing an account of the disposition made by this court in the case of Greenway v. White, but it also appears from this record that the contestant's counsel saw this juror with this newspaper before the case was finally submitted to the jury; that contestant's counsel then knew the contents of that newspaper, failed then to call the matter to the attention of the court, failed to ask to have the jury dischaged, or to take any step whatever in regard to the matter. It has frequently been written that litigants cannot, after learning of something of this kind, take their chances, then, if the verdict is against them, thereafter complain of it. The affidavit of one of the jurors is offered to show that C. B. Wills, another member of the jury, brought this newspaper mentioned above into the jury room, and read to the jury the article contained in it, and argued to his

fellow jurors that, in view of what this court had done, no verdict the jury might return would change the result. We have often written that the testimony of jurors is not admissible to explain the grounds of their decision or to impeach the validity of their finding. See Wolf v. Commonwealth, 214 Ky. 544, 283 S. W. 385; Commonwealth v. Skeggs, 3 Bush, 19; Johnson v. Davenport, 3 J. J. Marsh. 390; Lucas v. Cannon, 13 Bush, 650; Cain v. Cain, 1 B. Mon. 213.

We mentioned in the early part of this opinion the counterclaim, which is:

"The defendant further says that he believes and now charges it to be true that this plaintiff is not in good faith in his pretended efforts to obtain a new trial of that case of White v. Crooke et al., and charges that his real and only purpose is to wrongly and maliciously annoy, nag, and harass this defendant and the other devisees by bringing frivolous and fictitious suits, motions, and appeals for the express purpose of casting a cloud over the title of the defendant Greenway to the said farm, and to cast a cloud over the title of all the devisees herein, to the end that a large sum of money will be paid him to refrain from further annoyance. He says that these wrongful suits, motions, and appeals have and do now cast clouds over the title of this defendant and the other devisees to their devises, which hinders them in the use and enjoyment of the same, and has destroyed the vendible value of same, all to the great damage and injury of this defendant and the other devisees. This defendant says that he has been especially injured and damaged by this wrongful and malicious conduct of the plaintiff in the sum of $20,-000.00, for which sum he prays judgment and prays for all other proper relief."

The appellant, David Irvine, by this will and by the litigation that has grown out of it, has been deprived of a farm worth about $60,000.00 which it appears that his great uncle, William M. Irvine, desired him to have. David Irvine has not given up this farm without a struggle; in fact, he has been very diligent in the assertion of his rights, and in endeavoring to retain this farm, but we cannot see anything in the record to indicate that he had done anything wrong in so doing. His diligence has been

rather commendable. We have noticed the succession of defeats that have overtaken him in his efforts to maintain his title, but we know of no law to punish a man for availing himself of every right given him, and all this counterclaim amounts to is merely a request to have David Irvine punished to the extent of $20,000.00 for his diligence in asserting his legal rights. The lower court very properly disregarded this counterclaim, and the appellee is now asserting it in his cross-appeal.

This court has no authority to try this case. It has been tried, and all that we can do is to correct those errors preserved in and presented by the record that are prejudicial to the substantial rights of the parties complaining. See sections 134, 338, and 756, Civil Code.

We find no such error in the record. The judgment is affirmed on both the original and the cross appeals.