## Reynolds, et al. v. Sevier, et al.

(Decided June 1, 1915.)

### Appeal from Clay Circuit Court.

1. Wills—Execution—Attestation—Evidence—Witnesses.—Where an attesting witness, because of failing eyesight, is unable to iden-tify a will, the will may be identified and his attestation proven by other attesting witnesses who were present at the execution of the will.
2. Wills—Execution—Attestation—Evidence—Sufficiency.—In a will contest, evidence considered and held sufficient to show that the will was properly executed and attested.
3. Wills—Contest—Undue Influence—Evidence—Peremptory Instruc-tion.—In a will contest, evidence considered and held insufficient to show undue influence.

A. T. W. MANNING, H. C. FAULKNER and G. M. MANNING for appellants.

JOHN D. WHITE and O. A. WEHLE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this contest over the will of W. H. Sevier, de-ceased, there was a directed verdict sustaining the will. The contestants appeal.

The contestants ask a reversal on the following grounds: (1) Execution of the will was not properly proven; (2) the trial court erred in not submitting the question of undue influence to the jury.

1. The evidence bearing on the execution of the will is as follows: The attesting witness, Samuel Ar-nett, stated that at the request of the testator he went to the home of John D. White on August 8th, 1894, the date the will purports to have been executed. The tes-tator told Mr. White that he wanted him to write a will. Witness saw the will written and heard it read and then

signed it as a witness. When he signed the will the testator and Mr. Morgan were present. He also saw Morgan sign the will. The testator and John D. White also signed it. Witness was unable to identify his handwriting on the will because his eyesight had failed. John D. White, an attorney, testified that he wrote the will under the following circumstances: The testator came to his house on August 8th, 1894. Testator was accompanied by Samuel Arnett. Testator requested the witness to prepare the will. The will was written and read to the testator. William H. Sevier signed his name in the presence of witness. Samuel Arnett was sitting in the room at the time and he signed it as a witness. He was not sure that James Morgan heard the will read over before it was signed. (At this point the will was read by the witness to the jury.) Witness stated the will was exactly as he had written it. The will as read was signed by the testator in his presence and witness attested it in the testator's presence. Both Samuel Arnett and James Morgan attested it in witness' presence. James Morgan, the other attesting witness, stated that he was present on the occasion in question. Mr. Sevier came to Mr. White's house to have a will drawn up. He witnessed the will. The will was shown to him and he identified the will as the one in question. He attested the will in Mr. Sevier's presence. Though not positive about it, he thinks he saw the testator sign the will. He also thought that he saw Mr. White and Samuel Arnett sign the will.

It will be seen from the foregoing statement of the testimony that, though Arnett was unable to identify his handwriting on the will, because his eyesight had failed, he testified very clearly to the fact that the will was written and read over in testator's presence and in the presence of witness; that he signed it as a witness in the presence of the testator, and also saw the testator, White, and Morgan sign it. White says that he saw Arnett sign the will, and Morgan says that he thinks he saw both White and Arnett sign it. Arnett was unable to identify the will. Both White and Morgan did identify it. But it is insisted that as Arnett was not dead or incapable of testifying, but was present as a witness, it was not competent to prove by other witnesses that he attested the will. In the early case of Gwinn v. Radford, 2 Littell, 137, it was held that the

statute did not require the fact of attestation to be established alone by the testimony of the subscribing witnesses, but that such fact might be ascertained by any evidence competent for the purpose. In discussing the question the court said:

"It is certainly true that the statute requires a will in such a case to be attested by two witnesses subscribing their names in the presence of the testator; but it is equally true that it does not require the fact that it was, so attested to be established by the testimony of the subscribing witnesses only, and that it leaves the fact to be ascertained by any evidence competent for the purpose. It has accordingly been held, where the subscribing witnesses have died, or become insane, or are otherwise incapable of testifying that the fact of their having subscribed their names in the presence of the testator, may be established by proof of their handwriting; and wills have been established even in opposition to the wilful denial of their signatures by the subscribing witnesses, when called upon to testify. The point in controversy, then, resolves itself into a mere question of fact, whether the witness who is unable to recollect the mode of his attestation did subscribe his name in the presence of the testator."

The same doctrine was applied and followed in the cases of Pate's Administrator v. Joe, 3 J. J. Marshall, 113; Tudor v. Tudor, 17 B. Monroe, 304; and in Montgomery, &c. v. Perkins, &c., 2 Metcalfe, 448. In the last mentioned case the court said:

"If one or both of the subscribing witnesses had died, or become insane, or otherwise incapable of testifying before the trial, evidence of the fact of their having subscribed the will as witnesses would have been admitted, no doubt, without objection. Why may not the same fact be established by the same evidence, and for the same purpose—that of identifying the paper— even in opposition to their vague opinions and their uncertain recollections touching the fact of identity—a fact concerning which their opinions must, in the very nature of the case, be entitled to but little weight, when considered in connection with the explicit and satisfactory statements of another witness, who was present at the same time, who wrote the paper, and whose opportunities and capacity to know and to remember the material facts in dispute have not been questioned."

Clearly, under the above rule, it was competent for both White and Morgan to identify the will as the one signed by Arnett and prove that he attested it in the presence of the testator. While it may be that neither the testimony of Arnett nor of Morgan is sufficient of itself to show proper execution and attestation, yet the evidence of each, supplemented by the evidence of the other and by the evidence of White, shows conclusively that the will was signed by the testator in the presence of at least two credible witnesses, and that they subscribed the will with their names in his presence, and there being no evidence to the contrary, the trial court properly held, as a matter of law, that the execution of the will was properly proven.

2. The will in question was executed August 8th, 1894. The testator did not die until the year 1913, and the will was probated in December of that year. While the testator was quite young his father died. His mother subsequently married a man by the name of Reynolds. Of this union there were born several children. These children and the children of those who are dead, who are the half-brothers and nieces and nephews of the testator, are the contestants. The testator devised his property to his cousin, Sudie Sevier, and her brother's two children. It is shown by the contestants that their relations with the testator were pleasant, though, for many years prior to his death, there was no particular intimacy between them. Upon the marriage of his mother, many years ago, the testator went to live with his aunt, the mother of Sudie Sevier. The testator never married, but continued to live in the home of his aunt until his death. Though a number of witnesses testified for contestants, not a single witness stated that the testator was mentally incapable of making a will. To support the charge of undue influence the following evidence is relied on: P. B. Reynolds, one of the contestants, testified that about 35 years ago he thought a whole lot of the devisee, Sudie Sevier. They had a misunderstanding, but why she got mad at him he never knew. Since that time he had never been to her house but once. Prior to that time he and the testator had some business arrangements. Two or three months after Sudie quit speaking to him these relations were terminated. After that time he and the testator talked only of business matters and did not have much to say to

each other. However, their relations were friendly. After that witness went to Horse Creek and married. Thereafter the testator frequently invited witness to come and see him. Three or four years before the testator's death witness went to see him. Sudie came into the other room, and when he saw she was not coming in where he was, he got up and left. Witness also stated that on one occasion, about thirty-five years ago, testator traded a mule which he needed in his business for a horse for Sudie because Sudie wanted a horse to ride.

Another witness testified that in the year 1889, or 1890, testator deeded some land to Charles Sevier, Sudie's brother, and testator stated to witness that he wanted to deed it to Charlie so he would have a home. On being asked the leading question if the testator did not say that Sudie wanted him to make the deed to Charlie, so that Charlie would have a home, witness replied: "It strikes me there was some statement something like that made—Sudie's name was mentioned in the connection."·

The physician who attended the testator in his last illness testified that he recommended that fly screens be gotten for the room which the testator occupied. In referring to the matter the testator said that he and Sudie had discussed it, and she thought they were not necessary. It developed on cross-examination, however, that very few of the houses or rooms in that section of the country were screened.

Joseph Smith testified that on one occasion the testator bought some cattle from him. Testator then stated that he was dissatisfied with his will and would write another next week unless he should become better satisfied with it. Another witness testified that on one occasion, in 1912 or 1913, he paid some money to testator. The money was paid in gold and witness had some gold left. Miss Sudie spoke about exchanging some other money for the gold. The testator insisted she did not need it. His recollection was that testator handed to Sudie the gold which he paid him.

Here, then, we have a case where the testator bought Sudie Sevier a horse because she wanted it, handed her some gold on one occasion, and stated that he didn't get screens for his room because she objected to it. In addition to these facts, P. B. Reynolds, who seems to have been very fond of Sudie, had a misunderstanding with

her. After that they did not speak. This, however, did not affect his relations with the testator. On another occasion the testator conveyed a tract of land to Sudie's brother, and the witness thinks that Sudie's name was mentioned in connection with it. Fifteen witnesses testified for the contestants, and their testimony covers a period of thirty-five or forty years.

These are the only circumstances relied on to show undue influence. There was an utter failure to show that the testator was not mentally capable of making the will. It is not shown that any of the devisees were present when the will was executed or even suggested its execution. It is not shown that the testator was a weak character or that he was easily influenced by others. It is not shown that any efforts were made by the devisees to prejudice the mind of the testator against his other relatives, or that any scheme was resorted to to prevent their having intercourse with the testator. The circumstances relied on merely show that the testator was fond of Sudie and paid some deference to her wishes. They are altogether consistent with the theory that they were the natural outcome of the affection which he bore for one in whose home he had spent the greater part of his entire life, and are by no means sufficient to show that, in the making of the will in favor of the devisees, his free agency was destroyed or he was constrained to do against his will what he otherwise would have refused to do. It follows that the trial court properly refused to submit the question of undue influence to the jury. Hildredth v. Hildreth, 153 Ky., 597; Childers' Ex. v. Cartwright, 136 Ky., 498; Crump v. Chenault, 154 Ky., 187; Clark v. Young, 146 Ky., 377.

Judgment affirmed.