## Willie Marie Burris, et al. v. Jane Burris, et al.

(Decided October 23, 1925.)

### Appeal from Pike Circuit Court.

1. Wills—Will of Testator, Laboring Under Some Insane Delusion, Set Aside.—If testator, at time of execution of will, is laboring under some insane delusion with reference to matter relevant to his free agency to act in disposing of property by will, his testamentary disposition will be set aside as not having been his free and untrammeled act.

2. Wills—"Insane Delusion" is Belief in Things Not Existing which no Rational Mind would Believe to Exist.—"Insane delusion," such as to render will invalid, is belief in things which do not exist, and which no rational mind would believe to exist.

3. Wills—Beliefs of Testator, Founded on Unsubstantial Basis, Held Not to be Insane Delusion.—In contest of will by minor children of testator, who had devised property to sister, wherein it was contended that testator was suffering insane delusions regarding proportionate amount of money he had expended on divorced wife and children, and attitude of wife towards permitting him to visit children, and belief wife was teaching children he was not their father, held evidence introduced showed such to be beliefs founded on unsubstantial basis and not insane delusions.

STRATTON & STEPHENSON for appellants.

PICKLESIMER & STEELE and ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Floyd Burris died a resident of Pike county in September, 1921. After his death a paper dated August 19, 1919, was offered for probate in the Pike county court as his last will and testament. Its probate was contested by his two infant daughters, who were 11 and 9 years old respectively. The trial in that court resulted in over-

ruling the motion to probate the paper, because of the court's conclusion that the alleged testator was mentally incapacitated to make it, or that he was unduly influenced to do so. From that judgment his maiden sister, Jane Burris, prosecuted an appeal to the Pike circuit court; but before the hearing of the appeal in that court, the sister moved the county court to probate another paper purporting to be the testator's will, which was in exactly the same terms, but not in the precise phraseology, and which was of date May 6, 1919. The county court probated that paper, and from that judgment testator's children (appellants) prosecuted an appeal to the Pike circuit court. The two appeals were consolidated in the circuit court and heard together, and the jury impanelled to try the issues returned a verdict rejecting the paper of date August 19, 1919, but found that the one of date May 6 of that year was the last will and testament of the testator. The contestants (who were testator's two infant children and their statutory guardian) prosecute this appeal from the judgment of the circuit court pronounced on the verdict of the jury in the trial had therein, after their motion for a new trial was overruled.

Numerous supposed errors were relied on in the motion for a new trial, but they are all practically abandoned in this court, except the refusal of the circuit judge, who presided at the trial, to instruct the jury upon the issue as to an "insane delusion" of the testator at the time he executed the paper that the jury upheld. The instructions that the court gave are not attacked by counsel for appellants; but if they were, we have carefully examined them and find no error therein. While there are some objections to the testimony given, and to the refusal of some that appellants offered, yet those matters are not pressed on this appeal; and in most instances where the court rejected evidence offered by appellants there was no avowal as to what the witness would say if permitted to answer. If, however, the record was more in accord with the practice as to preserving and presenting such errors, we do not find, after a careful reading of the entire record, any error in the admission or rejection of testimony that would warrant a reversal of the judgment. So that, this opinion will be confined to a discussion of the chief point argued in briefs, i. e., the refusal of the court to instruct on the supposed issue of insane delusions entertained by the testator.

Before taking up that question it is proper to state that it is the law, that if a testator at the time he executes his will is laboring under some insane delusion with reference to a matter relevant to his free agency to act in disposing of property by will, his testamentary disposition will be set aside therefor as not having been his free and untrammeled act, and the pertinent question then is: Whether there was evidence of such insane delusion as to produce that effect, and if there was, it then becomes the duty of the court to submit it by a proper instruction. We will, therefore, first discuss the character of delusion necessary to become an insane one, so as to invalidate a will executed under its influence, and then see whether there was any evidence in this case to establish that character of delusion.

In determining the first proposition, it is well to remember that it is not every delusion under which a testator may be laboring that rises to the dignity of an *insane delusion* so as to invalidate his will; for an opinion, conclusion or impression as to the existence of certain facts entertained by him, though founded on false premises or unproved surmises is a delusion, but not necessarily an *insane one*. One may be deluded into such erroneous beliefs by vague and insufficient evidence, without possessing any of the symptoms of insanity, and when his delusion produces no disease of his mind or in any wise dethrones his reason. In such case the possessor of the delusion labors only under a misconception of the facts without any impairment of his mentality.

An insane delusion, such as to render a will invalid, is defined by the authors writing on the subject, "As a belief in things which do not exist, and which no rational mind would believe to exist. The essence of an insane delusion is that it has no basis in reason and can not be dispelled by reason. The subject matter must have no foundation in fact, for there is no such thing as a delusion founded upon facts. It must not be founded on evidence, for if there is any evidence, however slight or inconclusive, which might have a tendency to create the belief, such belief is not a delusion. Nor can one be said to act under an insane delusion if this condition of mind results from an inference or a process of reasoning, however illogical, drawn from facts which were shown to exist. A delusion is, therefore, to be distinguished from a mere mistaken opinion. An insane delusion is not

established when the court is able to understand how a person *situated as the testator was* might have believed all that the evidence shows that he did believe and still have been in full possession of his senses. A false belief even in facts which actually did not exist or a belief which a rational person may entertain, does not constitute an insane delusion. Nor are absurd opinions, however unfounded, insane delusions.'' (Our italics) 22 R. C. L. 102-103, paragraph 54. That definition is approved by all the courts of the country, including this one, under the varying facts of each particular case, and we will not encumber this opinion by references to cases from other jurisdictions. The later ones from this court approving, in substance, the above definition are, Raison v. Raison, 148 Ky. 116; Purdy's Administrator v. Evans, 156 Ky. 342; Coffey v. Miller, 160 Ky. 415; Trustees, &c. v. Overman, 185 Ky. 773; Wiggington's Executor v. Wiggington, 194 Ky. 385, and there are many others referred to in those opinions. It is pointed out in the Wiggington case, and some of the others referred to, that the delusion, in order to become an insane one, must possess some of the elements of spontaneity and without any basis in fact, and so abnormal as to at once demonstrate a diseased mind. Following the above definition, it is said in the Raison case that ''A belief founded upon evidence, however unsatisfactory that evidence may be to some other mind which measures it to test its sufficiency, is not an insane delusion.'' We have been unable to find any case in this jurisdiction or elsewhere in conflict with what we have said. On the contrary, those *supra* from this court, and every one from foreign jurisdictions that we have examined, fully sustain and support the definition taken from R. C. L., *supra*. It, therefore, becomes necessary to make a brief examination of the testimony in order to apply it to that definition.

It is insisted by learned counsel for appellants that the testator was laboring under an insane delusion sufficient to invalidate his will upon the questions, (1) touching the amount of money he had expended upon his divorced wife and children, (2) upon the question as to the attitude of his wife and her parents, with whom she was living (they having been divorced), toward him so as to permit him to visit and see his children without disturbance and (3) because he entertained the belief that his divorced wife was teaching his children that he was

not their father. In disposing of question (1) it will be necessary to refer briefly to some portion of the facts as developed by the testimony.

The testator and his maiden sister, who was slightly his senior, lived with their parents on their farm in a remote section of Pike county. Prior to the father's death he conveyed all or a portion of his land to the testator with the request that he would support and take care of the maiden sister, and he acknowledged her interest in the conveyed property, at least to that extent. Notwithstanding that conveyance, the father executed a will, and in it he attempted to dispose of his property equally between testator herein and his maiden daughter, and the language of that will is broad enough to indicate that the father was under the impression that his will devised real estate that he conveyed to his son, and it was under those conditions that the testator herein and his maiden sister occupied the premises after the death of their parents.

In 1911 testator married Miss Gertrude Bevins, a girl neighbor only sixteen years old, while he was 52 years of age. They moved to the testator's home, but for some cause the young wife became dissatisfied and would frequently visit her parents, who lived only two and one-half miles away, where she would remain for protracted periods. The first child was born at the home of her parents, after which she returned to the home of her husband and lived there in the same fashion about six months, when she became pregnant for the second time and returned to the home of her parents, where the child was born, and she continued there with it and her older child and never returned to the home of her husband. Finally, divorce proceedings were instituted, resulting in a decree of divorce with a judgment against the testator in favor of the wife for $3,800.00 alimony and all the cost of the divorce proceedings, including her attorney's fees. She was given the possession of the children and her husband was adjudged to pay her for each of them $10.00 per month. He superseded that judgment and appealed it to this court, where it was affirmed with damages (180 Ky. 365). The alimony, the damages, and all the costs of that proceeding amounted in the neighborhood of $5,000.00. The entire property of the testator at that time was adjudged to be about $20,000.00, but under the proof in this case it is shown to be between

$30,000.00 and $35,000.00 in value. Testator is shown to have been laboring under the impression that, under his promise to his father, and under his father's will, his maiden sister, the appellee, Jane Burris, was entitled to one-half the property standing in his name, which if true would render his belief that he had paid practically one-half of his property to his wife and children substantially correct. On the other hand, if he was mistaken upon the proposition as to his sister's title to half of the property, it was only a *belief* on his part and which was founded on an unsubstantial basis and could not, under the authorities, *supra,* be classified as an insane delusion.

Upon question (2), *supra,* there was considerable evidence to establish the impression of the testator that he was an unwelcome guest at the home of his father-in-law where his divorced wife resided; although the members of that family testified, including the divorced wife, that testator was not only always welcome in that home, but that he was sent word to that effect. No one is introduced to show that any such message was ever delivered to him, but if there had been, he was not compelled to believe it; and this question resolves itself to, at most, only an unfounded belief of testator, though supported by some evidence, since it is shown that he visited his father-in-law's house after his wife separated from him, and was refused admittance.

Question (3) above is wholly without any testimony in the record for its support. But if it appeared otherwise, when analyzed, it does not measure up to the definition of an insane delusion; for it should be remembered that the contention is that the insane delusion in testator's mind was, that he erroneously believed that his wife was teaching his children that he was not their father; and not that the fact was that he was not their father. However, as said, we find no evidence to support this contention, and it results that none of the facts relied on to constitute an insane delusion measures up to the legal requirements necessary for its creation, nor is the testimony sufficient to submit to the jury that issue.

Upon the two grounds of contest, that of mental incapacity and undue influence, there was a contrariety of testimony as is usual in such cases. Much of it was fanciful and of no weight, though some of contestant's witnesses gave testimony tending to show that testator's

mind was so affected as to incapacitate him to make the will; while a number of witnesses were introduced by contestees to the contrary, and upon the whole it is our conclusion that the testimony in favor of mental capacity preponderated, although a verdict for contestants might have withstood the test of its being flagrantly against the evidence.

There is comparatively no testimony, if indeed any, of undue influence. However, the court submitted that issue to the jury by a proper instruction and it found there was none. The testator executed the two papers at different times in substantially the same terms, and he explained to the draftsman on each occasion his exact wishes, and in each will he stated the reason why he favored his lonely, devoted and faithful sister in the disposition of his property, and she testified in this case that it was her intention and purpose to see that her brother's children were provided for out of the devised property after her death, but which testimony, however, has no relevancy in this case and it is referred to only for the purpose of indicating what will propably be the eventual result, as well as to, in some measure, satisfy the wish that the testator had remembered his children in his will with a more substantial portion of his property.

After a careful and painstaking review of the entire record, we find no grounds for disturbing the judgment and it is accordingly affirmed.