## Holden et al. v. Bennett et al.

(Decided May 3, 1932.)

668

ROBBINS & SMITH for appellants.

F. B. MARTIN and SETH T. BOAZ for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

This appeal requires a review of a trial before a jury which returned a verdict finding that the paper involved was the last will and testament of T. B. Starks. The contestants appeal.

The question of the sufficiency of the evidence to sustain the verdict of the jury is the determinative one.

The contestants introduced 33 witnesses and the contestees 24. It is apparent that to give a succinct statement of the testimony of each witness would require too much space. T. B. Starks and Pernie Starks were husband and wife. They resided in Graves county during their married life, which was a happy, quiet, and peaceful one. No children were born to them. D. D. Nall and T. B. Sparks married sisters. Marilla Nall, a niece of Pernie Starks, and a daughter of D. D. Nall and wife, began in her early infancy to visit frequently the home of T. B. Starks and wife. They became very fond of her. They endeavored to induce her parents to permit them to adopt her. They refused. As the child grew older, Starks and wife began to treat her as their own. Finally they took her into their home, and clothed, provided for, and schooled her, as if she were their daughter.

Some time about 1922, T. B. Starks executed and published a will, devising his estate to his wife. For many years next prior to his death Starks owned a planing mill and water plant which he operated in his home town, and at times engaged in the lumber business. He was a devout man, active, energetic, persistent, and successful in business, public-spirited, and took an active interest in, and devoted a great deal of his time to, the civic affairs and welfare of his community. He was a devoted member and officer of the Baptist church, with tendencies toward fanaticism. His mother and other relatives had manifested insanity. His mother at one period in her life was an inmate of a hospital for the insane. In the year 1927 Pernie Starks was ill, when she was taken to, and confined in, a hospital, where she died on the 9th day of March, 1927. After her death the body was embalmed and returned to her home at Wingo, Ky. On the night of March 11, while she lay a corpse in the home, T. B. Starks called J. D. Covington and Lester McWhorter into a room adjoining that in which was the body of his wife, where he wrote, signed, and had Covington and McWhorter to attest, his will, the paper now in contest. He directed by it that his burial expense and debts be paid, and devised the remainder of his estate to Marilla Nall. He delivered the will to J. D. Covington, who retained it until after the death of T. B. Starks. After the death of his wife, Marilla Nall continued to

live with him until his death, during which time they regarded and treated each other as parent and daughter; she doing the cooking and general housekeeping. After his death, his will was probated in the county of his residence, and from the order of probate his next of kin, who are his sisters, nieces, and nephews, appealed to the circuit court, a trial of which resulted in the jury sustaining the will.

A will wholly written and signed by a testator, or written by some other person in his presence and by his direction, and subscribed or acknowledged by him in the presence of two credible witnesses, who also subscribed their names as witnesses in the presence of the testator and each other, specifically complies with our statutes governing the execution of wills. Section 4828 Ky. Statutes; Rutledge v. Wigginton, 166 Ky. 421, 179 S. W. 389; Porter v. Ford, 82 Ky. 191; Reynolds v. Sevier, 165 Ky. 158, 176 S. W. 961, L. R. A. 1915E, 953.

The contestees to establish the execution of the will introduced only Covington, one of the attesting witnesses, and closed their evidence without introducing McWhorter, the other attesting witness. The contestants here contend that on this ground they were entitled to a peremptory instruction directing the jury to find the paper not to be the last will and testament of Starks. The rule is, if the will is rational and consistent on its face in its structure and language, the contestees after they show the statutory execution, then the burden shifts to the contestants to establish the unsoundness of mind of the testator, but, if the will is so irrational or inconsistent as to be incompatible with soundness of mind, then the introduction of evidence of mental soundness is necessary on the preliminary proof for the propounders. There is no showing bringing this case within the latter. Gernert v. Straeffers' Exr., 162 Ky. 605, 172 S. W. 1044. It was therefore not necessary for the contestees, after introducing evidence to establish the execution of the will, to go further and show that the testator was at the time of sound mind. The will is consistent on its face in language and structure, which authorized a presumption of soundness of mind which continued until the contestants overcame it. Leary v. Leary, 203 Ky. 344, 262 S W. 293. The execution of a will may be proven by one of the attesting witnesses, if he can testify that all of the requirements of the statute in its execution

were complied with. Tackett v. Tackett, 204 Ky. 831, 265 S. W. 336. Though even if this were not the rule the contestants are in no position to present such an objection, for, if any error was committed in failing to introduce McWhorter, and in the court not giving a peremptory instruction at the close of the preliminary evidence in behalf of the contestees, this error was cured by the contestants themselves introducing McWhorter. Instead of standing by their rights on the court overruling the motion for a peremptory instruction on the ground of which they now complain, they introduced McWhorter, and thereby waived the error complained of, if any.

The evidence offered as tending to show undue influence and want of testamentary capacity of the testator at the time he executed the will is so meager it requires an effort to assemble it for consideration. The testator on many occasions and in the presence of divers persons, both before and after the execution of his will, announced his fixed purpose to devise his property to Marilla Nall. No evidence was introduced to show, or as tending to show, that either Marilla Nall or D. D. Nall, or any other person, exerted, or attempted to exercise, any influence on the mind of the testator to induce the execution of the will or the giving of his property to Marilla Nall. It is shown without contradiction that Pernie Starks, the wife of T. B. Starks, did not want to be buried at a time when the ground was filled with water from rainfall, and that she had made this fact known to her husband, accompanied with the request that she be not buried under circumstances of that kind. After her death the body remained at their home for several days, during which time there was almost continuous heavy rainfall. The undertaker in charge advised T. B. Starks that the body, having been embalmed, could remain unburied for several days, as many as thirty. The contestants offered evidence showing that on the night the will was written and signed, and during the days the body was kept at the home, the testator announced that "he would build a vault in which he would place the body of his wife, and it would be as secure as was the body of the Saviour." To supplement the force and effect of this evidence, further evidence was heard that on one occasion he had preached the funeral of a tramp on the streets of Wingo, and, after the death of his wife, he had erected a "tourist home" or a "road house." Also

after his brother Sam suffered an injury which was prior to the death of his wife, and which produced his death, he had stated in the presence of friends on different occasions that he had talked with the Lord, and, notwithstanding the attending physician had informed him that his brother could not recover, he had declared Sam would not die from his injury.

The evidence as to the declarations of the testator relating to the building of the vault and keeping therein the remains of his wife is not convncing. when considered in the light of the testimony of the undertaker and the neighbors present at the time it is claimed his statements were made. But little weight should be given the evidence concerning his preaching the funeral of the tramp. An officer of the town advised and requested T. B. Starks to conduct the service held by him before the burial of the tramp. Though it was unusual, the evidence shows no impropriety in his holding of such service, or that anything was said or done by Starks on that occasion to indicate mental unsoundness. It was shown by evidence that a deacon of the Baptist church, of which the deceased was one, is authorized by his church to conduct such service. It is argued that the testator had been a religious man all his life, and that this fact, coupled with the fact that he erected a "tourist home" or "road house," shows such a sudden religious change of his mind as to indicate insanity, and that, but for his unsoundness of mind thus indicated, he would not have engaged in so doing. We are not convincingly impressed with this insistence.

The testator sustained an injury to his head and neck by a fall while erecting a barn in October, 1927, which produced concussion of the brain. From the death of his wife until he sustained it he actively, constantly, and regularly engaged in business in his usual way and manner. Some time after he had sustained this injury, his mind became affected, and he was committed to an insance asylum where he remained until his death. It is argued that, considering his inherited tendency to insanity, and his declarations relative to the burial of the body of his wife, the preaching of the funeral of the tramp, his statements disclosing his notion that he had talked with the Lord, who had imparted to him that his brother would not die from his injury, the erection of the "tourist home" or "road house," and the fact that he was finally committed to the asylum, sufficiently show

that at the time of the execution of the will he had not testamentary capacity. The evidence as to these subjects was conflicting. Many of his neighbors, business associates, and his family physician testified, giving their knowledge of his actions and conduct showing the soundness of mind. It may be stated that the evidence of the contestants merely tends to show that T. B. Starks was ultra-religious, and that his views of the subject conflicted with those of the contestants and many of their witnesses. It may be, and doubtless was, true that he misconceived the efficacy of his prayers, and over estimated his standing and relationship with the Lord, but such did not authorize the jury, the same not amounting to hallucination or insane delusion (Burris v. Burris, 210 Ky. 731, 276 S. W. 820; Nalty's Admr. v. Franzman's Exr., 221 Ky. 710, 299 S. W. 585), to declare the testator without testamentary capacity.

The contestants offered to show that Marilla Nall heard Pernie Starks say in speaking of T. B. Starks, "I know he will die in Hopkinsville," thereby meaning the hospital for the insane. We are unable to conceive of any reason that a statement of Pernie Starks in her lifetime, giving such an opinion, would be evidence in behalf of the contestants. If she were living such an opinion, even testified to by her, would not be competent. Bodine v. Bodine, 241 Ky. 706, 44 S. W. (2d) 840.

The bill of exceptions shows that during the argument in behalf of contestees, their attorney used this language: "Stanley Jones, plaintiff's witness, stated on this stand that he was not taking any interest in the prosecution of this case, but there is a member of the jury knows better than that." It cannot be seriously insisted, conceding this statement of counsel was improper, that the making of it in the presence of the jury is sufficient to justify a reversal. Stanley Jones was introduced in behalf of the contestants, and was examined by counsel of contestees as to his activity and interest in the case, which he denied. Notwithstanding his denial, the jury saw and heard him on direct and cross-examination and it cannot be doubted his evidence showed at least some interest in the case in behalf of contestants, and that all of the jury, instead of one of them as stated in the argument, had a right to determine from his evidence whether he had taken an interest in behalf of the contestants.

Other trivial phrases used in the argument of counsel of the appellees are complained of by the contestants. None of them, even if it be conceded that they were improper, was such as was calculated to influence or control the jury in reaching its verdict.

Wherefore the judgment is affirmed.