AMERICAN NATIONAL BANK & TRUST
COMPANY et al., Appellants,

v.

Willie H. PENNER, Appellee.

Court of Appeals of Kentucky.

Sept. 12, 1969.

Charles H. Reynolds, Robert W. Dickey, Bell, Orr & Reynolds, Marshall Funk, Bowling Green, for appellants.

Charles E. English, Harlan, Parker, Ricketts, Lucas & English, Bowling Green, for appellee.

EDWARD P. HILL, Jr., Chief Justice.

A jury found that J. W. Penner did not have the mental capacity to make a will on January 21, 1966 (date of his will), for the reason that at that time and in fact for some years he labored under "an insane delusion" relative to his daughter-in-law, Mable Cox Penner.

The executor under the will prosecuted this appeal.

J. W. Penner was 80 years of age on January 21, 1966, when he executed his last will. He died September 30, 1966. In 1957 he had executed another will with substantially the same provisions as the last will. He was survived by only one child, Willie Penner, the appellee, who is the contestant of the will. Four other children and his wife preceded testator in death.

Appellee Willie Penner married Mable Cox in 1952, and for a time they resided in the home of Mr. and Mrs. J. W. Penner. Trouble arose between Mable and the elder Mrs. Penner, in which J. W. Penner was sympathetic with the attitude of his wife. Conditions became worse until Willie and Mable moved out. Years before, the testator and his wife had had a similar experience with an older son, Robert, and his wife. They likewise moved out.

In 1960 testator sold his homeplace and personal property to Willie for $25,000, of which $13,000 was paid in cash and the balance of $12,000 was evidenced by twelve $1,000 notes secured by purchase-money lien. Thereafter testator purchased a house and lot in Plum Springs, a village two miles from the homeplace. After the death of Willie's mother, Mable and Willie visited testator and gave him the attention usually given an aging father. It was generally known that testator intended to disinherit Willie unless he divorced Mable. So ap-

parently thinking that the wounds had healed, Willie suggested that the old man go to town and change his will. The old man agreed and Willie took him to the office of the attorney who wrote the will. On the advice of the attorney, Willie was not present when the will was prepared or executed. Contrary to expectations testator made only minor changes in the will. He left his estate in perpetual trust with American National Bank and Trust Company with directions that the trustee collect the balance ($6,000) on notes due from Willie, with the provision that the income therefrom be paid to Willie during his lifetime. On the death of Willie, the income from the estate was devised to Mt. Olivet Cumberland Presbyterian Church and Green River Cemetery in equal portions. Two specific bequests of $1,000 each were made to two distant cousins.

Appellants' lone argument is that the "trial court erred in submitting the decedent's testamentary capacity as an issue for the jury to decide."

Appellee attempts to uphold the verdict on the theory that there was sufficient evidence that testator, on the date he made the will, was laboring under such an "insane delusion" as to be incapable of making a will.

Before reviewing the evidence, we should have some idea of what is meant by an "insane delusion." A lengthy definition of what is and what is not an insane delusion is found in Burris v. Burris, 210 Ky. 731, 276 S.W. 820, at page 821, taken from 22 R.C.L. 102, 103, from which we quote:

"'As a belief in things which do not exist, and which no rational mind would believe to exist. The essence of an insane delusion is that it has no basis in reason and cannot be dispelled by reason. The subject-matter must have no foundation in fact, for there is no such thing as a delusion founded upon facts. It must not be founded on evidence, for if there is any evidence, however slight or inconclusive, which might have

a tendency to create the belief, such belief is not a delusion. Nor can one be said to act under an insane delusion if this condition of mind results from an inference or a process of reasoning, however illogical, drawn from facts which are shown to exist. A delusion is therefore to be distinguished from a mere mistaken opinion. An insane delusion is not established when the court is able to understand how a person *situated as the testator was* might have believed all that the evidence shows that he did believe and still have been in full possession of his senses. A false belief, even in facts which actually did not exist, or a belief which a rational person may entertain, does not constitute an insane delusion. Nor are absurd opinions, however unfounded, insane delusions.'"

Page on Wills, Volume 1, § 12.32, at page 635 states: "The fact that the testator, at the time that he made his will, was mistaken in a matter of fact, does not of itself even tend to show that he was then suffering from an insane delusion." See also 57 Am.Jur., Wills, § 82.

There is an excellent and exhaustive opinion in Purdy's Adm'r v. Evans, 156 Ky. 342, 160 S.W. 1071, at page 1074, wherein this court quoted Schouler on Wills, § 162, as follows:

* * * "'Insane delusion should be distinguished from prejudice, or error, as well as from eccentricity. It differs essentially from some rational belief, not well-founded, however perversely the testator may have clung to it. An ill-founded belief, not actually insane, does not destroy testamentary capacity. And where one indulges in an aversion, however harsh, which is the conclusion of a reasoning mind, on evidence no matter how slight or inaccurate, his will cannot be on that account overturned.'"

The sum and substance of the evidence is that J. W. Penner was a man possessed of an inflexible and tenacious will; that his daughter-in-law, against

whom he nourished an aversion, was not guilty of the faults and accusations ascribed to her by the testator. It should be borne in mind that the evidence of her innocence and virtues came from Mable and her neighbors. The testator's version of the basis for his aversion to his daughter-in-law has been silenced by his death. But should we assume that Mable was without fault and that the testator was mistaken as to the facts concerning her virtues, this does not measure up to an "insane delusion" as our many cases have defined it. Testator may not have liked the way Mable arranged her hair or sat at the dining table, and upon such dislikes he could make it impossible that she ever inherit any of his property, even to the extent of disinheriting his own son if he, the testator, otherwise had the capacity to make a will.

■ All of the witnesses who testified for appellee were lay witnesses except Dr. William Kernohan, a psychiatrist, whose testimony was based solely on the history given to him by the son, Willie. The hypothesis on which he based his evidence left out material factors, such as: his dedication to the church (one of the beneficiaries); the fact that the origin of testator's aversion to Mable was in situations when two families attempted to live under the same roof; and the fact that Mable had no children.

Dr. Kernohan said: "I believe he was suffering from a condition of cerebral arteriosclerosis and he had a fixed delusion and that in my opinion that the severity of these conditions would overload his competency to make a will at that time." This testimony may have constituted evidence that the testator had a delusion in that he believed something to be true which was not in fact true; but the testimony was not evidence that the delusion was an insane one in that there was no basis in reason for the belief. In fact, the doctor would have had no knowledge of the facts which could rationally have given rise to the belief.

Inherent in the acquisition and ownership of property is the right to dispose of it as the owner sees fit. Gerard v. Gerard, Ky., 350 S.W.2d 719 (1961). Indeed it would be disheartening to a citizen in his last years (as was testator, who was past four score years) to contemplate the end and to know he must soon repose in a damp, musty grave and be deprived of his one last right concerning the property he worked to accumulate. It is the duty of the courts to protect this right. The courts have performed this duty in the past. Oftentimes a jury relates the validity of a will of a citizen with the jury's idea of what is right and just. This is not right.

The will itself furnishes no evidence of insane delusion. Mable is not mentioned. The personalty, a life estate in the home at Plum Springs, and the income from his estate for life is devised to Willie. It is clear from the will that he did not intend for Mable to benefit from his estate after the death of Willie. This he had a right to do regardless of his justification for so doing.

We conclude the evidence fell far short of supporting a conclusion that testator had such an "insane delusion" as to destroy his capacity to make the will in question. The judgment is reversed with directions that the trial court sustain appellant's motion for judgment upholding the will notwithstanding the verdict.

All concur.